FEDERAL INSURANCE COMPANY, Respondent, *v.* ATLANTIC NATIONAL INSURANCE COMPANY, Appellant.

First Department, February 15, 1968.

*Benjamin Heller* of counsel (*Cymrot, Wolin & Simon,* attorneys), for appellant.

*Richard D. Smith* of counsel (*Smith & Formidoni,* attorneys), for respondent.

McNALLY, J. This action between two liability insurance carriers involves the obligation and extent thereof for the amount of the settlement of a personal injury action paid by plaintiff to the passenger of the automobile involved and her father. The accident occurred on December 28, 1960, in Stowe, Vermont. James Morton had rented the automobile from Hertz

Corporation. He was operating the vehicle when it collided with a parked automobile. Plaintiff had previously issued a liability policy to Morton as the owner of another automobile which, in addition, applied to his operation of a nonowned automobile. Defendant's liability policy issued to Hertz also covered Morton as the renter of the automobile involved in the occurrence. The passenger and her father instituted an action in the Supreme Court, New York County, against Morton, Hertz and the owner of the other vehicle involved in the accident. This action was settled. Plaintiff's share of the settlement was $8,000. In addition, plaintiff incurred legal expenses in the sum of $4,681.88. Plaintiff seeks to recover $12,681.88.

Morton forwarded the summons and complaint in the prior action to plaintiff, who transmitted them to the defendant, Hertz's carrier. Defendant returned them to plaintiff with a letter stating defendant's position to be that both policies provide for excess coverage resulting in prorata liability; that each insurer was under the obligation to defend, but since Morton had forwarded the summons and complaint to plaintiff, it was its primary obligation to defend in behalf of Morton.

The nature and extent of the obligation of the parties are governed exclusively by the provisions of the policies. (*Sperling* v. *Great Amer. Ind. Co.*, 7 N Y 2d 442, 450.)

The provision with respect to the obligation of plaintiff in the circumstances is set forth in the policy as follows: " provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance." There is no claim that plaintiff would not be primarily liable if there were no other valid and collectible insurance.

The corresponding provision in the policy of defendant is as follows: " The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured either as an insured under another policy or otherwise."

There is no doubt but that each company would be primarily liable on its policy if Morton had but the one policy of that company.

Although the policies are differently worded, the situation is no different than those that have been frequently passed upon — the courts holding that where there is coverage by more than one policy and each policy contains an excess coverage clause, and if each company would be primarily liable if it was the only policy covering the loss, there must be an apportionment pro rata. (*Brown & Kreuger* v. *Firemen's Ins. Co. of Newark*,

17 N Y 2d 698; *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.*, 293 N. Y. 236, 252; *Weekes* v. *Atlantic Nat. Ins. Co.*, 370 F. 2d 264, 274 [C. A., 9th]; *Factory Mut. Liab. Ins. Co. of America* v. *Continental Cas. Co.*, 267 F. 2d 818 [C. A. 5th]; *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.*, 28 N. J. 554; Ann. 69 ALR 2d 1122, 1124–1126.)

Nor is the liability changed by the fact that Morton did not fully understand or know the provisions of the policy written for Hertz. That is quite immaterial. The provisions of the policy govern whether or not he was aware of them. We may add that we do not have before us a claim by Morton that he was misled by Hertz as to the extent of his liability coverage in respect of the rented automobile. (Cf. *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co., supra*, p. 254.) And, even if Morton was misled, this is not an action by him for fraud. This is merely an action between two liability insurers to determine their respective liabilities under the policies herein, and the determination of that question is to be governed by the documents.

Defendant-appellant denies it refused to defend its insured, James Morton. It also contends plaintiff's settlement with the injured occupant of the rented motor vehicle operated by Morton and her father was voluntary because it arose out of an occurrence governed by the Vermont guest statute, which precludes liability on the part of the operator of the motor vehicle unless the occupant pays for carriage or the occurrence arises out of the gross or willful negligence of the operator. Said denial and defense present factual issues which preclude summary judgment.

The judgment and order for summary judgment should be reversed, on the law, with costs to defendant-appellant, and the motion therefor denied.

BOTEIN, P. J. (dissenting). This action stems from a dispute between two automobile liability insurers regarding their respective obligations to a common insured.

James Morton, a New York resident, was the holder of a family combination automobile policy issued by appellant Federal Insurance Company. In addition to covering the automobile Morton owned, the policy provided protection with respect to any nonowned automobile, subject to the proviso that "insurance with respect to a * * * non-owned automobile shall be excess insurance over any other valid and collectible insurance."

In December, 1960 Morton, while in Vermont, rented an automobile there from Hertz Corporation. Hertz was the named insured, and any renter of an automobile from it was included as

an additional insured, under a policy issued to Hertz by respondent Atlantic National Insurance Company. This policy contained the following clause: " The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured either as an insured under another policy or otherwise."

The day after Morton rented the car he was driving it on a Vermont highway with two passengers when it collided with a parked car, injuring Nicole Schindler, one of the passengers. She brought an action in New York against Morton, Hertz and the owner of the parked car. After differences arose between Federal and Atlantic as to which was to defend Morton, Federal assigned counsel to represent him, and Atlantic assigned counsel to represent Hertz. The action was discontinued as to all defendants after a settlement to which Morton and the owner of the parked car contributed, Hertz declining to participate in the settlement. Morton's contribution having been paid by Federal, it brought this action against Atlantic to recover the amount of the payment plus its expenses in defending Morton in the Schindler action. Federal was awarded summary judgment, and Atlantic appeals.

Since the car involved in the accident was owned by Hertz, and since it was Atlantic's policy which covered that car, Special Term regarded Atlantic's policy as primary insurance and Federal's policy as excess. Atlantic argues that the clauses above quoted made both policies excess insurance and, since the clauses are mutually repugnant, that both carriers should share the cost of the settlement (citing *Cosmopolitan Mut. Ins. Co.* v. *Continental Cas. Co.*, 28 N. J. 554, as representative of a number of cases taking this view; cf. *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.*, 293 N. Y. 236, 249, 252). I think the determining factors are the nature and effect of the provisions in the rental agreement between Hertz and Morton relating to insurance and of Atlantic's connection with that agreement.

The insurance provisions of the rental agreement are set forth in the margin.[1] They conveyed to Morton that he was partici-

---

[1] " (3) Renter being one of the assured under an insurance policy covering vehicle agrees to comply with all the terms and conditions of said policy, which by reference are incorporated herein and made a part hereof, and to comply with the terms and conditions appearing below, whether above or below his signature.

" (4) Renter further expressly agrees to indemnify the Insurance Company for any and all loss, damage, cost and expense paid or incurred by the Insurance Company because of injuries or damages sustained by occupants of vehicle, in states where the law makes Hertz or its Insurance Carrier liable for injuries to occupants of vehicle or because of injuries or damages resulting from

pating in the benefits of a policy and was an insured under it. He agreed to comply with the terms and conditions of the policy, and his participation in the benefits was made subject to its terms, conditions, limitations and restrictions. No copy of the policy was furnished him, and he was warned that not all the terms, conditions, limitations and restrictions were outlined in the agreement. A selected few, however, were. But the selection did not include a reference to the excess insurance clause. It was not intimated to Morton and he could not know that if he carried other insurance the Hertz policy was intended to be secondary, affording protection only after Morton's own policy was exhausted or at most affording only ratable protection with Morton's policy.

In these circumstances Morton must have thought that Hertz was providing him with primary insurance, and in my opinion it was reasonable to think so. And Atlantic may not divorce itself from Hertz, may not disclaim a share of responsibility, in creating Morton's impression. Atlantic's policy is denominated ''Hertz Special Automobile Policy (Stations).'' Not only does the imprint of the Hertz name in a number of provisions indicate that the document was prepared with awareness of the Hertz plan of operation, but the second condition of the policy states: '' The named insured shall, concurrently with the delivery of the automobiles to the renter or driver, issue a Hertz rental agreement and secure the renter's or driver's signature and address thereon, and deliver a copy of said agreement to him. Said agreement shall describe the automobile, and show the odometer or speedometer readings and be time stamped (showing date and time) when the automobile is delivered to

---

the use, operation or driving of vehicle in violation of any of the terms and conditions appearing herein. * * *

"Renter participates in the benefits of an automobile public liability and property damage insurance policy subject to the terms, conditions, limitations and restrictions thereof and is bound by such terms, conditions, limitations and restrictions even though all of them are not outlined in this rental agreement. Said policy does not cover the renter or driver for injuries sustained by passengers or guests or any person while riding in or alighting from or getting into or on vehicle or liability imposed upon or assumed by the assured under any Workmen's Compensation Act, plan or law or any contract of whatever nature and requires that every accident must be immediately reported in writing to the Station from which the vehicle is rented and in any event within 24 hours after the accident and renter or driver must immediately deliver to the Station from which the vehicle is rented or to the insurance carrier as soon as practicable, every process pleading or paper of any kind relating to any and all claims, suits and proceedings received by renter or driver. The renter and driver shall not in any manner aid or abet any claimant but shall cooperate fully with the Insurance Company in all matters connected with the investigation and defense of any claim or suit."

the renter or driver and returned by him to the station of the named insured, and the number of miles for the trip shall be computed on said agreement.'' It is evident that Atlantic knew and approved the insurance sections of the ''Hertz rental agreement'' which Morton signed.

Morton had a policy, obtained primarily because he himself owned a car. Had the document been in his pocket when he rented Hertz's car, and had he taken it out for examination, he would have found that it protected him with respect to the rented car to the extent the Hertz policy was insufficient. In the face of the assurance in the rental agreement that he was protected by the policy relating to the rented car, would it have occurred to him that he was receiving a lesser quantum of protection from it than he would have received had he owned no automobile and possessed no policy of his own?[2] In the face of the reference in the rental agreement to specific limitations in the policy relating to the rented car, would it have occurred to him to ask to see a copy of the policy in order to ascertain whether there was also a limitation of the coverage to excess insurance? The answers, to my mind, are not in doubt, but if doubt exists it should be resolved, on familiar principles, against Hertz, and therefore against Atlantic with whose sanction Hertz acted (*Janneck* v. *Met. Life Ins. Co.*, 162 N. Y. 574, 576–578; *Janos* v. *Peck*, 21 A D 2d 529, 533, affd. 15 N Y 2d 509).

The temporary renting of automobiles to transients is a flourishing business, widely and vigorously advertised. One of the inducements to renters is the furnishing of insurance protection, and doubtless they understand that the rental charge reflects the cost of such insurance. Few, however, are skilled in insurance matters, and the renting companies and the insurers expect few to pause for careful consideration of their insurance status. The law assumes that the renter will have read the agreement he has signed, but lack of clarity should not be his risk.

---

[2] It is not unlikely, also, that Morton, as an insured owner, was contributing, by way of the rental charged him, to the insurance premium reflected in the rental charged a nonowner. Atlantic's policy, in its coverage of a nonowner, would have constituted primary insurance, for the nonowner would have no policy to which Atlantic could look as a base for its claim of excess coverage. Primary insurance is more costly than excess insurance. "The cost of increased limits is relatively small when compared to the cost of minimum coverage" (*Cosmopolitan Mut. Ins. Co.* v. *Continental Cas. Co.*, 28 N. J. 554, 564, *supra*). Presumably Atlantic's premiums took that fact into account, since renters include nonowners, i.e. primary insureds, as well as insured owners. If so, not only was Morton receiving less protection than he would have received had he owned no car, but he was paying in part for the protection of nonowners.

I do not believe it necessary to discuss Atlantic's remaining contentions at any length. As for its argument that it should not be bound by Federal's settlement with the injured occupant of the rented motor vehicle, it is clear that Atlantic knowingly abdicated its responsibility to represent Morton, reserving to itself only its undeniable duty to represent Hertz. In these circumstances, and since I believe that Atlantic bore the sole obligation to defend Morton as well as Hertz, it should not be heard in criticism of Federal's management of the case leading to eventual settlement.

The order entered on January 25, 1967, granting respondent's motion for summary judgment, and the judgment entered on February 2, 1967 pursuant to said order, should be affirmed, with costs and disbursements.

CAPOZZOLI and RABIN, JJ., concur with McNALLY, J.; BOTEIN, P. J., dissents in opinion.

Order and judgment reversed, on the law, with $30 costs and disbursements to appellant, and plaintiff's motion for summary judgment denied.