**CROWLEY'S MILK CO. Inc., Plaintiff,**

v.

**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Defendant.**

**No. 66 C 455.**

United States District Court,
E. D. New York.

Aug. 7, 1969.

Supplemental Memorandum
Aug. 14, 1969.

John J. McGuire, Garden City, N. Y. (Marvin, Montfort, Healy, McGuire & Salley and E. Richard Rimmels, Jr., Garden City, N. Y., of counsel), for plaintiff.

Sidney A. Schwartz, New York City (Alexander, Ash & Schwartz, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

DOOLING, District Judge.

In this action for a declaratory judgment on issues of liability insurance coverage and of the effect of "other insurance" clauses in the contracts of the insurers involved, the dispositive facts have been stipulated.

It is concluded that plaintiff is an insured under defendant's contract with Samuel Products Corp. entitled to be indemnified by defendant against the claim of Ludwig Kuerner and to have defendant defend Kuerner's suit against plaintiff. It is further concluded that, subject to further review of the facts, the coverage of defendant is primary and that of plaintiff's casualty insurer is excess, and that defendant could, in certain circumstances, be liable for the cost of the excess carrier's efforts of defense on plaintiff's behalf from and after the date on which there was a demand by the excess carrier that defendant cover the case and a refusal by defendant to do so.

Kuerner was an employee of Walter Pape, Inc., and he allegedly sustained injuries while unloading a truck owned by Samuel Products Corp. and loaded with plaintiff's products. The truck was loaded at Le Fargeville, New York, by plaintiff's employees with plaintiff's products, which had been sold to Walter Pape, Inc. The doors of the truck were then closed, and plaintiff and its employees had no further sight of or control over the truck and its contents. The truck was driven 325 miles to the Pape plant in Queens by persons who were not employees of plaintiff. At Pape's plant Pape employees—among them Kuerner —unloaded the truck. During the unloading the accident upon which Kuerner sued allegedly occurred.

Kuerner claimed in his action that plaintiff had loaded the Samuel truck negligently, and that the consequence was that Kuerner was injured when the negligently stowed cans and cartons toppled over on him. He sued for $350,000.

Samuel had a liability insurance contract with defendant under which defendant agreed to pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile." A "condition" of the contract provided that, "Use of an automobile includes the loading and unloading thereof." The "insured" is defined thus in the insuring

agreements (emphasis added), "The unqualified word 'insured' includes the *named* insured [Samuel] and also includes *any* person *while using* an owned automobile \* \* \* provided the actual use of the automobile is by the *named* insured or with his permission. \* \* \*'' A "condition" of the contract defined "owned automobile" as (emphasis added) "an automobile owned by the *named* insured."

1. Plaintiff contends and defendant denies that plaintiff is covered as an (unnamed) insured in respect of the Kuerner claim and the defense against it. The dispute centers on defendant's contention that plaintiff under the express wording of the definition of the insured was an insured only *"while* using" an insured vehicle owned by Samuel; defendant argues that it is not enough that the injurious accident arises out of plaintiff's use of the vehicle, it must also occur while plaintiff is still "using" the vehicle in one of the senses of the word "use" defined in the policy; to hold otherwise, it is urged, will subvert the New York "complete operation" doctrine, which, it is argued, depends on a time-bounded concept of liability for negligently caused accidents occurring at any time during, but only if occurring during, the loading or unloading operation. No New York case passing directly on the point has been turned up. It would be fair to say that the New York cases finding coverage under the loading and unloading clause have in general involved accidents occurring during loading or unloading and that the langauge of decision is either neutral or tends to assimilate a finding of coverage to a finding that the negligent act took effect during the loading or unloading period. See, *e. g.,* Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R. R., 1st Dept. 1963, 18 A.D.2d 460, 240 N.Y.S.2d 88. It might be argued that plaintiff's permitted use of the truck was broader than the bare loading and embraced the carrying of the load to destination and its unloading particularly since the "loading" was a dangerous condition installed and continuing in

the truck with the assent of Samuel, *cf.* Ar-Glen Corp. v. Travelers Ins. Co., Monroe 1957, 8 Misc.2d 589, 167 N.Y.S.2d 332; but apart from that, analysis requires the conclusion that the present case is unrelated to the "complete operation" doctrine and that coverage is present.

■ The present case deals explicitly with liability for negligent loading. No extension of the definition of "loading" to ancillary and preparatory stages removed in place, time and superficial function is required to reach the simple putting of the products in the truck. The problem in the cornerstone "complete operation" decision, Wagman v. American Fidelity & Casualty Co., 1952, 304 N.Y. 490, 109 N.E.2d 592, was to extend "unloading" to include a seemingly remote and unrelated act. No resort need be had in this case to the "complete operation" doctrine there redefined and adopted, for the act was "loading" even in the narrowest imaginable definition of the term. Nor does the "complete operation" doctrine imply a principle that makes critical the time when the damage (as distinguished from the negligent conduct) occurs. The "complete operation" doctrine applies whether the alleged negligence during loading or unloading is that of a third party or that of the insured. *Cf.* Hudson River Concrete Products Corp. v. Callanan Road Improv. Co., 3rd Dept. 1957, 5 A.D.2d 49, 168 N.Y.S.2d 801. And the principle of *Wagman* is essentially that loading and unloading relate not to the immediate handling in and out of the truck but to the whole commercial delivery by consignor to carrier and by carrier to consignee.

■ The loading here was, thus, a covered "use" of the vehicle, and the insured" (when identified) was indemnified against liability for damages arising out of any of his negligence in the loading. The question then is simply quite without reference to *Wagman* and its progeny, whether the contract definition of "insured" as including *"any*

person"—not excluding the insured himself—"*while* using an owned * * * or a hired automobile" means that the named or additional insureds are not indemnified against liability arising out of their negligent use of any automobile unless both their negligence and the accidental consequence of it occur during the use. Since the function of the insurance contract is to indemnify the insured against tort claims based on his alleged negligence in the use of the vehicle, the sense of the words would seem necessarily to be that the named and additional insureds are "insureds" (*i. e.,* are "covered") in respect of, and only in respect of, their acts "while using" the vehicle, to the extent that those acts give rise to a duty to pay damages for bodily injuries caused by accident and arising out of the use of the vehicle. Putting to one side the imaginable extreme case of a long-delayed consequence as not present here and not so significantly likely to occur as to dictate an interpretation of the contract that would impose on it a limitation at war with its basic purpose of indemnifying against the consequences of tortious misconduct in the use of vehicles, there is no reason or purpose for limiting coverage to accidents occurring during use *and* caused by negligence during use, and such a limitation would require plain speaking in the contract language.

The only cases—and they are out-of-state cases—in which the precise point has come up under similar contract language have resolved it in favor of finding coverage even though the negligence in loading or unloading produces the accident only after the loading or unloading has been completed. See Gulf Ins. Co. v. Mack Warehouse Corp., E.D.Pa. 1962, 212 F.Supp. 39, 41; American Auto Ins. Co. v. Master Bldg. Supply & Lumber Co., D.Md.1959, 179 F.Supp. 699, 703; Maryland Casualty Co. v. Dalton Coal & Material Co., W.D.Mo.1949, 81 F.Supp. 895, 898–899, modified on other grounds, 8th Cir. 1950, 184 F.2d 181; Panhandle Gravel Co. v. Wilson, Tex.Civ.App.1952, 248 S.W.2d 779; *cf.* American Motorists Ins. Co. v. Nashua Lumber Co., 1961, 103 N.H. 147, 167 A.2d 681; Employers' Liability Assur. Corp. v. Indemnity Ins. Co., D.Md. 1964, 228 F.Supp. 896, 899 col. 2, last par.

2. Plaintiff had a contract of insurance with Insurance Company of North America (INA) entitled "Comprehensive Liability Policy." The Coverage A undertaking of that contract ("Bodily Injury Liability") was, in the language of Insuring Agreement No. 1, "To pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person and caused by accident." Endorsement #8 deleted the words "caused by accident" from Coverage A and provided that wherever "accident" was used in the policy "occurrence" should be substituted. Endorsement #14, applicable to Coverage A, imposed a $100,000 limitation on the insurer's liability "for all damages on account of injury sustained by one person," and further stipulated that the limit applied "to all damages covered by this endorsement"; the endorsement supplied "coverage" only with respect to certain intentional torts (e. g., false arrest and libel). However, the INA contract included several apparently affiliated companies and the individual declaration pages forming part of the contract show that the policy limit for Coverage A under the Comprehensive General Liability Policy as applicable to plaintiff's New York locations was $100,000 per person. The contract advertently provided no Comprehensive Automobile Liability Policy for plaintiff, and the applicable individual declaration states that "Bodily Injury Liability (Coverage A)" is "Not Covered." Plaintiff is named in the individual declaration of Quality Dairy, Gloversville, on the Comprehensive Automobile Liability Policy covering certain units, but neither the units nor the coverage ($500,000 each person under Coverage A) appears to be involved in the present case.

Plaintiff was, therefore, covered by INA to the extent of $100,000 against liability in Kuerner's case and INA undertook plaintiff's defense; it is said that INA did not put plaintiff on notice that it covered Kuerner's $350,000 claim to the extent only of $100,000, and it is said that such conduct is a defense without reservation and waived the policy limit. The limit in defendant's contract with Samuel is $250,000 a person.

Both the INA and defendant's contract contain the following clause:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

INA argues that under the quoted clause its insurance is excess and defendant's primary. Granting that, absent excess clauses, the two companies would be coinsurers, and that the liability would be apportioned in the ratio of their coverages, INA argues that so far as its contract is concerned the loss arises out of the use of a non-owned automobile, that is an automobile not owned by the *named* insured, and that under defendant's contract the loss does not arise out of the use of a non-owned automobile but out of the use of a vehicle owned by defendant's named insured. Hence, argues INA, under the clear language of both contracts its insurance is excess and defendant's primary.

Surprizingly, INA, although the contract insurer of the plaintiff wrongdoer, is excess, and defendant, a windfall-insurer of the plaintiff wrongdoer by virtue of its contract with Samuel is primary insurer. The unobvious result follows inescapably from the meshing language of the two contracts, which are not at war with each other. INA's contract defines owned automobile as meaning owned by INA's *named* insured. That excludes the Samuel vehicle. Defendant's contract defines owned automobile as an automobile owned by defendant's *named* insured. That includes the Samuel vehicle. Hence, the INA contract reads simply that INA grants excess insurance attaching where other insurance ends. Congruently, defendant's contract reads simply that defendant grants coverage to an additional-insured user, and, since the insurance is not with respect to the use of a hired or non-owned automobile of defendant's insured but with respect to the use (though by an additional insured) of an owned automobile of defendant's insured, the excess clause does not read on the facts and is inoperative. The two contract clauses are written in identical terms and do not clash but cooperate in their specific application to the facts.

Defendant argues that Lorraine Textile Specialties, Inc. v. Employees Mutual of Wausau, N.Y.L.J., January 3, 1969, P. 18 (not yet elsewhere reported) is on all fours on the facts, that it requires proration on the present facts, and that under *Erie* it must be followed. The facts as stated in *Lorraine* do appear to present a case in which the *Lorraine* "premises" policy covered only as excess where the loss arose out of the use of a non-owned automobile, and the trucker's policy with Employers covered as excess (in a user case) only when an automobile not owned by its named insured was involved; it does not appear whether the trucker insured by Employers used his own or a hired or borrowed truck, and it is natural to assume that it was an owned truck. *Lorraine* finds—properly—that *Lorraine's* "premises" policy would have covered as primary if the trucker's policy with Employers had not existed, but the decision itself was rested

squarely on Federal Ins. Co. v. Atlantic Nat'l Ins. Co., 1st Dept. 1968, 29 A.D. 2d 204, 287 N.Y.S.2d 212; that case held only that where two excess clauses met inescapably in direct literal collision so that if each was given effect there would be only "excess insurance" and no primary insurance (although each policy would have been clearly primary if the other had not existed), proration followed as in the case of coinsurers. It must be concluded therefore that *Lorraine* rests on findings that the two policies it dealt with were contradictory rather than congruent, and, if that be so, the case has no application here. General Accident, Fire & Life Assur. Corp. v. Piazza, 1958, 4 N.Y.2d 659, 669, 176 N.Y.S.2d 976, 152 N.E.2d 236, and Chenango Gas Co. v. Allstate Ins. Co., Broome 1963, 39 Misc.2d 177, 240 N.Y.S. 2d 194, aff'd on opinion below, 3rd Dept. 1963, 19 A.D.2d 928, 245 N.Y.S. 2d 330 clearly apply the principle, for which INA here contends, that compatible "other insurance" clauses in policies of two insurers indemnifying the same insured against the same loss are given effect according to their terms. In each case, as here, the result was to give effect to the language making coverage for the non-owned vehicle loss an excess insurance, and to leave the additional-insured coverage as the primary insurance. See also Traveler's Ins. Co. v. Employers Liability Assur. Corp., D.Md.1965, 242 F.Supp. 627, 629, aff'd, 4th Cir. 1966, 367 F.2d 205; Pepsi-Cola Bottling Co. of Charleston v. Indemnity Ins. Co., 4th Cir. 1963, 318 F.2d 714. See to similar effect Great American Ins. Co. v. Schaefers, N. Y. Co. 1965, 47 Misc. 2d 522, 262 N.Y.S.2d 953; Hardware Cas. Co. v. Massachusetts Bonding Co., N. Y. Co. 1954, 129 N.Y.S.2d 304.

Such cases as Oregon Auto Ins. Co. v. United States Fidelity & Guar. Co., 9th Cir. 1952, 195 F.2d 958, Hancock v. Western Casualty & Surety Co., E.D.Ky.1957, 154 F.Supp. 164, Insurance Co. of Texas v. Employers Liability Assur. Corp., S.D.Cal.1958, 163 F.Supp. 143 and Continental Cas. Co. v. St. Paul Mercury F. & M. Ins. Co., S.D.Fla.1958, 163 F.Supp. 325 are based on findings or assumptions that the two insurance contracts conflicted, in that each provided that it became excess if other insurance existed; as in the *Federal* case, the courts prorated liability since neither "excess" clause could claim ascendancy over the other, and each insurance contract would admittedly have furnished primary coverage if the other policy had not been written. The excess clauses neutralized or cancelled each other, as it were.

▪ In view of the holding that INA is an excess and defendant a primary insurer, it is not necessary now to pass on the question of the ratio of indemnification as it may affect intercompany duties to defend and to share the expense of defense. It will be seen, however, that the INA contract has been read as furnishing only $100,000 of relevant coverage (since the INA contract is read as an aggregation of individual coverages of separate companies separately rated and charged, and as including no relevant automobile coverage as such); it is assumed that INA's course of action in defending has not altered its rights as against defendant. It may be that counsel will wish to reopen those points if the reading of the contract adopted here is incorrect, or if there is relevant and competent evidence on the effect of INA's defense activities.

3. Defendant contends that it would not in any case be liable for any part of INA's to-date incurred costs of defending. See 7-A Appleman, Insurance Law and Practice (1962) 511. John Wanamaker, New York, Inc. v. Otis Elevator Co., 1920, 228 N.Y. 192, 126 N.E. 718, mainly relied on by defendant, may well be thought to hold no more than that an insurer who sues in his insured's right on a claim-over against an alleged third party wrongdoer or indemnitor cannot recover the insurer's cost of defending the insured since that is a cost *not* in fact incurred by the insured and there-

fore the cost is not recoverable in what is—in essence—a subrogation suit. But *cf.* Crosson v. N. V. Stoomvaart Mij Nederland, E.D.N.Y.1967, 266 F.Supp. 409, 411. There are cases, however, which clearly hold (*e. g.,* United States Fidelity & Guaranty Co. v. Tri-State Ins. Co., 10th Cir. 1960, 285 F.2d 579) or possibly suggest (American Fidelity & Casualty Co. v. Pennsylvania T. & F. M. Cas. Ins. Co., 5th Cir. 1960, 280 F.2d 453, particularly 459–460 and fn. 11) that a wholly or partially excess insurer cannot recover from a primary insurer all or any part of the cost of defending even where the primary insurer wrongly refuses to assume or share the defense. The Fifth Circuit case, though it has been cited as so holding, in fact leaves the point open.

On the other hand California and Illinois have explored the question in the light of the split in authority on the issue and allow recovery for such expense of defense, Continental Casualty Co. v. Zurich Ins. Co., 1961, 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455, New Amsterdam Casualty Co. v. Certain Underwriters, 1966, 34 Ill.2d 424, 216 N.E.2d 665; surely reason commends that holding, at least where there is a distinct demand that the defense be assumed. See American Surety Co. of New York v. Canal Ins. Co., 4th Cir. 1958, 258 F.2d 934, 937; Employers' Liability Assur. Corp. v. Indemnity Ins. Co., *supra* 228 F.Supp. at 902 and fn. 7. *Cf.* Universal Underwriters Ins. Co. v. Wagner, 8th Cir. 1966, 367 F.2d 866, 877 and fn. 22; United States Fidelity & Guaranty Co. v. Millers Mut. F. Ins. Co., 8th Cir. 1968, 396 F.2d 569, 572–573 and fn. 4. New York appears today to be clearly of the California-Illinois view, although, apparently, the Court of Appeals has not passed directly on the point. Fidelity Gen'l Ins. Co. v. Aetna Ins. Co., 2d Dept. 1966, 27 A.D.2d 932, 278 N.Y.S.2d 787; Royal Globe Ins. Co. v. Dinan, Nassau 1964, 42 Misc.2d 595, 248 N.Y.S.2d 469.

The time is not ripe, the facts have not been developed and the proper parties are not present of record, to determine the matter, but in the light of the pleadings and the attention given to the point by counsel, it may be that an expression of view at this stage will suggest further steps to counsel.

Accordingly, it is

Ordered that

1. The Clerk enter judgment, without costs, in a form to be approved by the Court that

A. Plaintiff is an additional insured under defendant's contract of insurance with Star Dairy, Inc., et al. (No. CAL 19551);

B. That plaintiff is entitled to coverage by defendant with respect to the claim of Ludwig Kuerner made by summons and complaint, verified August 5, 1965, in the Supreme Court, Queens County;

C. That plaintiff is not entitled to recover of defendant any amount in resect of the costs of its defense incurred by Insurance Company of North America (INA); and that INA would not as a matter of law be excluded from a right to be reimbursed by defendant in whole or part for such incurred costs of defense either by reason of the fact that it could not be entitled to recover them as the subrogee of plaintiff or by reason of the fact that in view of the stated amount of the Kuerner claim and INA's coverage of plaintiff as excess insurer it had, or may have had (and has, or may have), a duty to defend against, or to share the defense of, the Kuerner claim; and

D. That if Kuerner recovers a judgment against plaintiff in the Queens County action on the ground that plaintiff was negligent in using the Samuel Products Corp. vehicle with the permission of Samuel Products Corp. and that such negligence was a proximate cause of Kuerner's injury and damages, then defendant is bound to pay, to the extent of its policy limit, the sum which plain-

tiff is obligated by the judgment to pay as damages because of Kuerner's bodily injury adjudged to have been caused by such negligence; and

2. That entry of the foregoing judgment be deferred for an initial period of thirty days pending application by the parties or Insurance Company of North America for further relief or for modification of the proposed judgment.

## SUPPLEMENTAL MEMORANDUM

Federal Ins. Co. v. Atlantic Nat'l Ins. Co., 29 A.D.2d 204, 287 N.Y.S.2d 212, cited on page 507 of the Memorandum and Order of August 7, 1969, was reversed in the Court of Appeals insofar as it held that summary judgment was precluded by the existence of a question of fact. See Law Report News July 22, 1969, p. 8. The Court of Appeals, 25 N.Y.2d 71, 302 N.Y.S.2d 769, 250 N.E.2d 193, however, agreed with the proposition of law for which *Federal* was cited and remarked that

"Normally, then, where the driver and the owner are separately insured, the driver's own policy provides for 'excess' coverage, whereas the owner's policy contains a prorata 'other insurance' clause. In such a situation, the owner's policy is regarded as 'primary' and the driver's as 'secondary.' (See, *e. g.,* General Acc. Fire & Life Assur. Corp. v. Piazza, 4 N.Y.2d 659, 176 N.Y.S.2d 976, 152 N.E.2d 236.)"

In the case before it, the Court held that the conflicting excess clauses canceled each other out, both policies covered and the trial court had only to decide the amount of Federal's loss to be shared by Atlantic including "the amount of the plaintiff's counsel fees and other expenses in defending Morton."

The case confirms the conclusion expressed on the third question involved in the case.