**P. C. BETTENBURG et al., Plaintiffs,**

v.

**The EMPLOYERS LIABILITY ASSUR-ANCE CORPORATION, LTD.,**
**Defendant.**

**No. 4–70–Civ. 345.**

United States District Court,
D. Minnesota,
Fourth Division.

March 9, 1972.

Clyde F. Anderson, Meagher, Geer, Markham & Anderson, Minneapolis, Minn., for plaintiffs.

James H. Geraghty, Altman, Geraghty, Leonard & Mulally, St. Paul, Minn., for defendant.

## MEMORANDUM DECISION

LARSON, District Judge.

This action is presently before the Court on a motion by the plaintiffs, and a cross-motion by the defendant, for summary judgment. The matter was argued to the Court on December 17, 1971.

For purposes of this proceeding the plaintiffs can be considered to constitute two separate entities. The first of these includes the individual plaintiffs, all of whom were doing business as the architectural and engineering firm of Bettenburg, Townsend, Stolte and Comb, and who will hereinafter be referred to collectively as the plaintiff architects. The second party plaintiff is the Continental Casualty Company, hereinafter referred to as Continental.

The facts as they relate to the instant action are not in dispute. In 1964 the State of Minnesota contracted with the plaintiff architects for the design of a building to be constructed on the State Fairgrounds in St. Paul, Minnesota. In February 1967, less than two years after construction of the building had been completed, the building collapsed. The State of Minnesota subsequently sued the plaintiff architects and others for $327,016.23, alleging that the collapse was due to breach of contract, breach of warranty, and negligence on the part of the various defendants.

At all relevant times, the plaintiff architects were insured by two liability policies: (1) A professional liability policy (commonly referred to as an "errors and omissions" policy) issued by the plaintiff Continental, and (2) a comprehensive liability policy issued by the defendant. Continental conceded that its policy afforded coverage to the plaintiff architects for their liability for the collapse of the building, and proceeded to provide a defense for the plaintiff architects in the action brought against them by the State. The defendant, however, after being tendered the defense, refused to defend and denied that its policy afforded coverage for this type of

liability. The limit on liability in the Continental policy was $250,000, whereas the limit on liability in the portion of defendant's policy which plaintiffs claim affords coverage for this type of liability was $25,000.

The suit by the State against the plaintiff architects and others was settled for $180,000, plaintiffs' share being $75,000. Of this $75,000, Continental paid $67,000 and the plaintiff architects paid $8,000 (the amount of the deductible under the Continental policy). The reasonableness of this settlement is not disputed by the defendant.

Additionally, in defending this action the plaintiff architects incurred and paid $10,160 in attorneys' fees, and Continental incurred and paid $29,314.88 in attorneys' fees. The reasonableness of these amounts likewise is not disputed by the defendant.

Following settlement of the original suit, plaintiffs brought the instant action against defendant, alleging that defendant was required by its contract of insurance with the plaintiff architects to contribute $25,000 toward the plaintiff architects' ultimate liability with regard to the collapse of the building. Plaintiffs claim that because of defendant's failure to so contribute, they should now be allowed to recover this $25,000 ($17,000 going to Continental and $8,000 to the plaintiff architects) from the defendant. Furthermore, plaintiffs claim that defendant was obligated by this same insurance contract to provide a defense for the plaintiff architects in the original action, and that defendant's failure to do so entitles plaintiff Continental to recover one-half of its costs of defense ($14,657.44) from the defendant and entitles the plaintiff architects to recover their entire cost of defense ($10,160) from the defendant.

Since none of the facts are in dispute, the motions for summary judgment are proper at this time. The motions raise the following issues for the Court's determination:

1. Whether the insurance policy issued by the defendant to the plaintiff architects affords coverage for the type of liability which the plaintiff architects incurred as a result of the collapse of the building; and

2. If so, to what extent is defendant liable to plaintiffs in damages for failing to provide this coverage? The amount of damages sought by the plaintiffs can be divided into four categories:

(a) Amount sought by plaintiff architects as a result of damages paid by plaintiff architects to the State of Minnesota;

(b) Amount sought by Continental as a result of damages paid by Continental to the State of Minnesota;

(c) Amount sought by plaintiff architects as a result of attorneys' fees incurred by plaintiff architects in the defense of the original action; and

(d) Amount sought by Continental as a result of attorneys' fees incurred by Continental in the defense of the original action.

Before embarking upon a resolution of these specific issues, it should be noted that the parties have agreed that Minnesota law should control the resolution of this dispute. This Court therefore must place itself in the position of the Minnesota Supreme Court in attempting to ascertain the appropriate law to be applied. Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967).

## I. COVERAGE

The portion of defendant's insurance policy under which plaintiff architects claim coverage is afforded with respect to their liability for the collapse of the building reads as follows:

*"Coverage D—Property Damage Liability—Except Automobile.*

[The insurer agrees] [t]o pay on behalf of the insured all sums which the

insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

■ The law is clear in Minnesota that the language used in a contract of insurance, as in other contracts, must be taken and understood in its "plain, ordinary, and popular sense." Bobich v. Oja, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). See also Lowry v. Kneeland, 263 Minn. 537, 540, 117 N.W.2d 207, 210 (1962); Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 253, 58 N.W.2d 855, 857 (1953).

■ Taking the above quoted language of the policy in its plain, ordinary and popular sense, it seems clear to this Court that the insurance policy issued by the defendant to the plaintiff architects did afford coverage to the plaintiff architects for the liability which they incurred as a result of the collapse of the building. There can be no dispute that the damages paid by the plaintiffs to the State of Minnesota were "sums which the insured . . . [became] . . . legally obligated to pay as damages because of injury to or destruction of property . . . caused by accident."

■ There is no ambiguity in the above quoted language of the policy, nor has the defendant directed the Court to any language in the remainder of the policy which could possibly be construed as an exclusion of coverage in this situation. Defendant merely argues that it did not intend to provide coverage in this type of situation. Defendant's subjective intent, however, is of no relevance where the language of the policy is clear and unambiguous.

■ Furthermore, the law in Minnesota is also clear that since the language in an insurance policy is that of the insurer, any reasonable doubt as to its meaning must be resolved in favor of the insured. Bobich v. Oja, supra. A fortiori, where, as in the instant case,

there is no reasonable doubt as to the meaning of the language, but only as to the subjective intent of the insurer in issuing the policy, the doubt must likewise be resolved in favor of the insured.

This Court therefore finds that the policy issued by the defendant to the plaintiff architects did afford coverage to the plaintiff architects for the liability which they incurred as a result of the collapse of the building.

## II.  DAMAGES

Having determined that defendant's policy did afford coverage to the plaintiff architects for the liability here involved, the Court must now determine to what extent, if any, defendant is liable to the plaintiffs in damages for failing to provide this coverage. As stated supra, the damages which plaintiffs seek can be divided into four categories. The first two categories, which involve defendant's liability for its policy limits, will now be discussed, leaving the questions involving attorneys' fee to be discussed infra.

### A.

■ The law in Minnesota with regard to the respective liabilities of insurance companies in situations such as that presented by the instant case where two or more insurance policies are found to provide coverage for the same risk, is not altogether clear. The more recent Minnesota decisions, however, seem to indicate that rather than simply making an attempt to resolve the conflicts in the language of the "other insurance" clauses of the various policies, the Minnesota Courts will attempt to ascertain "the total policy insuring intent" of the respective policies, and allocate the liabilities accordingly. Federal Insurance Co. v. Prestemon, 278 Minn. 218, 231, 153 N.W.2d 429, 437 (1967). See also State Farm Mutual Automobile Insurance Co. v. Firemen's Fund American, 290 Minn. 504, 186 N.W.2d 534 (1971); Olson v. Hertz Corp., 270 Minn. 223, 133 N.W.2d 519 (1965).

In Federal Insurance Co. v. Prestemon, *supra*, the Minnesota Supreme Court rejected the approach to this type of problem which attempts to reconcile the various conflicting "other insurance" clauses in the separate policies. It stated:

"The better approach . . . is to allocate respective policy coverages in the light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy." 278 Minn. at 231, 153 N.W.2d at 437.

Similarly, in Olson v. Hertz Corp., *supra*, the Minnesota Supreme Court, after being presented with the argument that the "other insurance" clauses in the two policies should cancel each other out and that the loss should therefore be distributed ratably between the two insurers, stated:

"This would be true if it were not for the fact that the policy of insurance issued by Atlantic appears to have been designed specifically to meet the liability exposure here involved, whereas the policy of insurance issued by Mutual Creamery appears to afford coverage as a mere incident of its object . . . ." 270 Minn. at 228, 133 N.W.2d 523–524.

Based upon this reasoning the Court found that Atlantic was the primary insurer and that the Mutual Creamery policy would not afford coverage until the Atlantic insurance had been exhausted.

Admittedly, most of the Minnesota cases which deal with this problem involve conflicting policies of automobile insurance, and none of the Minnesota cases are factually similar to the situation presented by the instant case. These factual distinctions, however, do not require a different approach to the problem. The principle to be applied remains the same: attempt to ascertain "the total policy insuring intent" of the respective policies, and allocate the liabilities accordingly.

■ Applying this approach to the facts of the instant case, it seems clear to this Court that the plaintiff Continental was the primary insurer of the risk involved in this action. The policy of insurance issued by Continental to the plaintiff architects was designed specifically to meet the type of liability to which the plaintiff architects were exposed as a result of the collapse of the building, whereas the policy issued by defendant appears to afford coverage as a mere incident of its object, which was to provide general, comprehensive liability coverage, with major emphasis on liability arising out of automobile accidents.

According to Minnesota law, therefore, an examination of the conflicting "other insurance" clauses of the respective insurance policies is not necessary. This Court finds that, with respect to the liability here involved, Continental was the primary insurer and defendant was merely an excess insurer. Defendant, therefore, was required to contribute to the settlement only to the extent that Continental's insurance was exhausted. Accordingly, since the settlement made by Continental was far below its policy limits, defendant's only liability in this regard is that it must reimburse the plaintiff architects for the $8,000 (the amount of the deductible under the Continental policy) which they, as individuals, were required to contribute to the settlement. Defendant owes nothing to Continental in this regard.

### B.

With regard to the question of attorneys' fees, Continental contends that since the defendant's policy did afford coverage to the plaintiff architects for the liability here involved, and since the defendant's policy also contained the standard clause promising to defend the plaintiff architects in any action involving possible liability covered by the poli-

cy, and since the defendant breached this promise by failing to defend the plaintiff architects in the original action, thus placing the entire burden of defense upon Continental, it (Continental) should be allowed to recover from the defendant one-half of the attorneys' fees which it expended in defending the plaintiff architects in the original action.

■ Minnesota law, however, does not support Continental's argument. A recent Minnesota decision clearly holds that an excess insurer who refuses to join in the defense of an insured, is not required to split the costs of defense with the primary insurer unless the amount actually recovered by the plaintiff exceeds the primary insurer's policy limits, regardless of the fact that the amount which was originally sought by the plaintiff may have been in excess of the primary insurer's policy limits. American Surety Co. v. State Farm Mutual Automobile Insurance Co., 274 Minn. 81, 142 N.W.2d 304 (1966).

In light of this decision it is clear that the plaintiff Continental is not entitled to recover from the defendant any portion of the attorneys' fees which it expended in defending the plaintiff architects in the original action. The Court has already determined that, with regard to the liability here involved, Continental was the primary insurer and defendant was merely an excess insurer. Therefore, since the settlement made by the plaintiffs was well within Continental's policy limits, defendant cannot be required to contribute to Continental's costs of defense.

■ As a final argument, the plaintiff architects contend that they should be allowed to recover from the defendant the attorneys' fees which they expended in defending themselves in the original action. The plaintiff architects were required to obtain counsel independent of those provided by Continental because the maximum limit on liability in the Continental policy was $250,000, whereas the plaintiff architects were being sued for over $327,000, thus leaving them with an uninsured interest in the litigation of over $77,000. The plaintiff architects retained independent counsel to protect this uninsured interest. Plaintiff architects now claim that had the defendant offered to contribute its $25,000 worth of coverage toward their ultimate liability, it would not have been necessary for them to have retained independent counsel to protect their uninsured interest.

This contention, however, does not seem realistic, because, even if the defendant had offered to contribute its $25,000 worth of coverage toward the plaintiff architects' ultimate liability, the plaintiff architects would still have had an uninsured interest in the litigation well in excess of $50,000. This Court simply cannot conclude, at least on the information which has been presented to it, that these plaintiff architects, who retained counsel to protect an uninsured interest of $77,000, would not have retained counsel to protect an uninsured interest of well over $50,000. It seems far more realistic to conclude that even if the defendant had offered to contribute its $25,000 worth of coverage, the plaintiff architects would still have retained counsel to protect their uninsured interest in the litigation.

This Court therefore finds that defendant's failure to offer its insurance coverage toward the plaintiff architects' ultimate liability in the original action was not the cause of the plaintiff architects incurring attorneys' fees in that action. Accordingly, plaintiff architects are not entitled to recover those attorneys' fees from the defendant in this action.

Based upon the foregoing,

It is ordered:

1. That defendant pay to the plaintiffs, other than Continental Casualty Company, $8,000, plus interest from October 30, 1969 (the date upon which payment of this sum was made by these plaintiffs to the State of Minnesota).

2. That in all other respects plaintiffs' motion for summary judgment be, and it hereby is, denied.

3. That in all other respects defendant's cross-motion for summary judgment be, and it hereby is, granted.