OPINION OF THE COURT
Herbert Kramer, J.
Plaintiff herein, the defendant driver in the underlying negligence action, seeks a summary declaration (CPLR 3212) adjudging the defendant Nationwide Mutual Insurance Co. (hereinafter Nationwide) liable for defense costs in the underlying action. Third-party defendant, Reliance Insurance Company (hereinafter Reliance), cross-moves for an order granting summary judgment.
Defendant Fiorito was the owner of the vehicle which struck a pedestrian. Fiorito had previously delivered her automobile to defendant Monte Carlo Auto Repair, Inc. (hereinafter Monte Carlo) for a tune-up.[1]
In the underlying action, the pedestrian, Rivera, alleged that Belmer was operating the vehicle owned by Fiorito, with her knowledge, permission and consent and within the course of his employment with Monte Carlo.
Both carriers initially declined to defend based on a lack of permission to drive the vehicle. Nationwide additionally declined because the vehicle was not being used in the course of Belmer’s employment, claiming he was not test-driving the vehicle as part of the "repair or servicing” of the vehicle.
Reliance thereupon retained separate counsel to represent Belmer, the operator of the Fiorito vehicle.
The underlying action was settled on June 2, 1992 for $80,000 of which Nationwide agreed to pay $75,000 and Reliance $5,000.[2] The Nationwide policy had $300,000 liability coverage while the Reliance policy had $10,000 liability coverage.
*847 CONTENTIONS
Belmer and Reliance contend that Nationwide had the sole obligation to defend the driver pursuant to the terms of the Nationwide garage owner’s policy.[3]
Reliance contends that Belmer was test-driving the vehicle in furtherance of Monte Carlo business after the vehicle had been serviced by Monte Carlo at Fiorito’s request.
Nationwide contends that it has not clearly been established that Belmer was driving the vehicle with permission of the owner and that they had no duty to defend and that Reliance should bear the full cost of defense.
DISCUSSION
The duty to defend arises out of and is governed by the allegations in the complaint for which the insured may stand *848 liable, and which fall within the risk covered by the policy and is greater than the duty to pay (Everlast Sporting Goods Mfg. Co. v Aetna Ins. Co., 23 AD2d 641; Goldberg v Lumber Mut. Cas. Ins. Co., 297 NY 148; Ross v Maryland Cas. Co., 11 AD2d 1002, affd 9 NY2d 876; Touchette Corp. v Merchants Mut. Ins. Co., 76 AD2d 7; Calkins v Merchants Mut. Ins. Co., 59 AD2d 1052; International Paper Co. v Continental Cas. Co., 35 NY2d 322; 7C Appleman, Insurance Law & Practice § 4691 [Berdal ed]; 14 Couch, Insurance § 51:35 [2d ed]).
Since the underlying complaint alleges that the vehicle involved in the accident was driven with the permission and authority of the owner, Reliance owes the driver a duty to defend (Colon v Aetna Life & Cas. Ins. Co., 66 NY2d 6 [1985]; Insurance Law § 3420).
Test-driving a vehicle recently repaired at a service station is at least "incidental to a garage business”, and thus Nationwide owed the driver a duty to defend (12 Couch, Insurance § 45:119 [2d ed]; North E. Ins. Co. v Woodside Auto Painting, 103 Misc 2d 1016). Thus, both carriers owed the plaintiff driver the duty to defend based on the allegations of the underlying complaint.
We must then turn to the "Other Insurance” provisions in each policy. The Nationwide policy, by the terms of the "Other Insurance” clause, requires it to be excess as to a nonowned vehicle. The Reliance policy is pro rata to all other valid insurance. Where the policies are in conflict, an excess policy for a nonowned vehicle remains excess where an owned vehicle policy has a pro rata clause (Farmingdale Fire Dist. v Government Empls. Ins. Co., 58 Misc 2d 978; 8A Appleman, Insurance Law & Practice § 4909.25; 71 NY Jur 2d, Insurance, § 1894). Thus, the Reliance policy is deemed the primary policy and the Nationwide policy excess.
It should be noted that we are not dealing herein with a previously designated policy of primary and excess coverage for specified risk and insured.[4] We are dealing with coinciden *849 tal mutual coverage, that is, as herein, where coverage is based on the mere fortuitous nature of the incident, where a vehicle, which was being test-driven by an employee of Monte Carlo at the time of the accident, struck a pedestrian.
State and Federal courts have considered the issue of allocation of defense costs between primary and excess insurers (Annotation, Defense Costs — Primary and Excess Insurers, 19 ALR4th 107).
New York holds with the majority of the States, that where the ad damnum is within the limits of primary coverage or no possibility exists of payment by the excess carrier, no obligation to defend of the excess carrier is created. (Downey v Merchants Mut. Ins. Co., 30 AD2d 171; Financial Indem. Co. v Colonial Ins. Co., 132 Cal App 2d 207, 281 P2d 883; cf., McFarland v Chicago Express, 200 F2d 5; Kanter Agency v Continental Cas. Co., 541 F2d 519; American Sur. Co. v State Farm Mut. Auto. Ins. Co., 274 Minn 81, 142 NW2d 304; Bettenberg v Employers Liab. Assur. Corp., 350 F Supp 873.)
How the costs of defense are to be allocated is treated differently in different jurisdictions.
The majority view seems to be that defense costs, in cases of coincidental mutual coverage, should be apportioned among insurers in accordance with the contribution to the payment of the loss, unless there are contractual provisions otherwise.
Several New York courts have similarly held that an excess carrier is entitled to reimbursement by the primary carrier for costs of defense where the recovery was within the primary limit. (Mandell Corp. v Insurance Co., 125 Misc 2d 390; Broome County Co-op. Fire Ins. Co. v Aetna Life & Cas. Co., 75 Misc 2d 587; Dankoff v Bowling Proprietors Assn., 69 Misc 2d 658; Crowley’s Milk Co. v American Mut. Liab. Ins. Co., 313 F Supp 502 [ED NY].)
In Continental Cas. Co. v Zurich Ins. Co. (57 Cal 2d 27, 366 P2d 455), the court held that costs of defense are payable in the same ratio as the judgment, relying upon general principles of equitable subrogation (cf., Federal Ins. Co. v Atlantic Ins. Co., 25 NY2d 71; Hartford Acc. & Indem. Co. v Civil Serv. Empls. Ins. Co., 33 Cal App 3d 26, 108 Cal Rptr 737; Travelers Ins. Co. v Norwich Union Fire Ins. Socy., 221 Cal App 2d 150, *850 34 Cal Rptr 406). Where a claim was over the limits of the primary policy, the primary and excess insurers were each liable for a pro rata share of the defense in proportion to the amount each paid on the claim (American Fid. Ins. Co. v Employers Mut. Cas. Co., 3 Kan App 2d 245).
Some courts have held that where the recovery was not yet determined or was within the primary limit, the excess insurer was not required to contribute to the cost of defense. The court, in Financial Indem. Co. v Colonial Ins. Co. (132 Cal App 2d 207, 281 P2d 883, supra), reasoned that there was no right of contribution from one insurer to another because the duty to defend is between the insured and each insurer. They found that the excess carrier did not have a duty to the other insurer (cf., McFarland v Chicago Express, 200 F2d 5, supra; Kanter Agency v Continental Cas. Co., 541 F2d 519, supra; American Sur. Co. v State Farm Mut. Auto. Ins. Co., 274 Minn 81, 142 NW2d 304, supra; Bettenberg v Employers Liab. Assur. Corp., 350 F Supp 873, supra).
Where the excess carrier provides the defense, generally they have a right to be reimbursed for defense costs where the recovery was within the primary limit or was not yet determined (Travelers Ins. Co. v Norwich Union Fire Ins. Socy., 221 Cal App 150, 34 Cal Rptr 406, supra; Pacific Indem. Co. v Universal Underwriters Ins. Co., 232 Cal App 2d 541, 43 Cal Rptr 26; Cunningham v Austin Ford, 189 So 2d 661 [Fla], cert dismissed 198 So 2d 829 [Fla]; Fireman’s Fund Indem. Co. v Freeport Ins. Co., 30 Ill App 2d 69).
In a case factually similar to the case at bar, the court held the liability policy of an auto repairman excess and the owner’s policy primary and found that the primary insurer was liable for costs of defense of an action against the repairman for damages resulting from an accident while the repairman was driving the vehicle. The excess carrier assumed the defense and settled the claim for an amount less than the limits of the primary policy and therefore as excess insurer was entitled to be reimbursed for the costs of defense (Western Pac. Ins. Co. v Farmers Ins. Exch., 69 Wash 2d 11, 416 P2d 468).
Where a settlement exceeded the primary coverage the excess carrier was not responsible for the cost of defense since there was no agreement between the insurers to share the cost of defense (Federated Mut. Ins. Co. v Pennsylvania Natl. Mut. Co., 480 F Supp 599, affd 659 F2d 1080; Nordby v Atlantic Mut. Ins. Co., 329 NW2d 820 [Minn 1983]).
*851 A unique approach was formulated in American States Ins. Co. v Angstman Motors (343 F Supp 576), where the court determined that the excess carrier should contribute a pro rata share to the defense costs in accordance with the ratio between its maximum coverage and the maximum coverage of the primary carrier.
Where the primary insurer tenders the full amount of its policy, some courts have held that the primary insurer is not required to reimburse the excess insurer for defense costs. The duty to defend terminated upon payment of the policy limit (United States Fire Ins. Co. v State Farm Fire & Cas. Co., 246 Ark 1269, 441 SW2d 787; National Union Ins. Co. v Phoenix Assur. Co., 301 A2d 222 [DC Cir]; Hartford Acc. & Indem. Co. v South Carolina Ins. Co., 252 SC 428, 166 SE2d 762).
Other courts have held that a primary insurer and an excess insurer should each pay one half of the defense costs regardless of the limits of the policies, reasoning that defense costs are not related to policy limits but are the same regardless of the policy limit. (Viani v Aetna Ins. Co., 95 Idaho 22, 501 P2d 706 [overruled on other grounds]; Central Natl. Ins. Co. v LeMars Mut. Ins. Co., 294 F Supp 1396; American Fid. & Cas. Co. v Pennsylvania Cas. Co., 97 F Supp 965, affd 188 F2d 364 [6th Cir, Tenn].) The New York courts should reject the equal distribution of defense costs in cases where an insurance company has paid its full policy, reasoning that the contractual clause in the contract absolves the insurer of their remaining duty to defend.
A minority of courts have held that although a recovery exceeded the limits of the primary insurer and required payment from the excess insurer, the excess insurer was not required to contribute to the cost of defense, reasoning that the expenses were incurred before the primary coverage was exhausted and before any request to the excess carrier for participation in the defense (Signal Cos. v Harbor Ins. Co., 27 Cal 3d 359, 612 P2d 889).
A minority of jurisdictions have held that an excess insurer who handled the driver’s defense and negotiated a settlement within the limits of the primary insurance had no right to recover the cost of defense from the primary carrier. The courts reasoned that the excess insurer had a contractual duty to defend and this duty was separate from indemnification and thus had no right to contribution from the primary insurer for costs of defense, recognizing that the primary *852 insurer also had a duty to provide a defense (Maryland Cas. Co. v American Family Ins. Group, 199 Kan 373, 429 P2d 931; cf., Iowa Natl. Mut. Ins. Co. v Universal Underwriters Ins. Co., 276 Minn 362, 150 NW2d 233; United States Fid. & Guar, v Tri-State Ins. Co., 285 F2d 579; Travelers Ins. Co. v American Fid. & Cas. Co., 164 F Supp 393).
In Integon Gen. Ins. Co. v Universal Underwriters Ins. Co. (100 NC App 64, 394 SE2d 209), the court held that an automobile dealer’s garage liability insurer was the primary carrier and was required to provide coverage for automobiles owned by the dealer and operated by an employee within the scope of his employment and driven with the dealer’s permission. As the primary carrier they were required to provide a defense for the employee, including attorneys’ fees and litigation expenses in accordance with the policy limits. In the case at bar, Reliance contends that each carrier owed to its named insurer a separate duty to defend, apart from the existence of any coverage, and Nationwide should bear its own expenses with regard to the defense of its employee.
In this case, however, it should have been clear from the early stages of the litigation that contribution by the excess carrier was required in judgment or settlement. It is further clear that under tort law the vehicle owner should have been indemnified by the repair shop, bailee, and its employees. It also appears that while the vehicle owner could effectively be indemnified against the driver of the automobile, the garage owner could not be indemnified by an employee acting in the course of employment. It thus appears likely that in a trial of the underlying action there would be a great likelihood of success by the owner against both the garage and its employee.
The courts of this State have clearly preferred active, initial participation in cases of this kind, rather than leaving an insured without a defense (Federal Ins. Co. v Atlantic Natl. Ins. Co., 25 NY2d 71, supra). While not mandatory, early consultation and participation by all effected carriers lends itself to an earlier disposition and to the conservation of judicial resources.
This court finds that because of the indemnification posture, the primary carrier was not obligated to tender its policy, and with it, the obligation of defense, where it appeared that the excess insurer would be forced to contribute towards the settlement or judgment. The court further holds that the *853 primary insurer had the initial duty of defense until it appeared that the excess carrier would have to contribute to the judgment. The mutuality of obligation between the insureds and the respective carriers required that the excess carrier contribute to the defense. When it appeared that the excess carrier’s funds would be implicated, both carriers were required to jointly deal with the defense issues, to consult, participate and pay for the defense, after an initial determination of the necessity of the excess carrier’s funds. The obligation of payment should be dependent upon the realities of the litigation.
In the case at bar, it appears that the owner of the vehicle may be indemnified by the driver and the garage. Thus, this would tend to explain why the primary carrier with a $10,000 policy paid only $5,000. This court cannot accept the view of those courts which require exhaustion of the primary policy prior to transferring the obligation to pay defense costs. The better view, this court opines, would to the extent possible, equate obligation of payment of judgment to obligation of payment for defense, while recognizing that the two clauses are in fact severable. Conservation of judicial resources, equitable costs and fiduciary obligations between the various insureds and the carriers would be encouraged by increasing the mutuality of the obligation of costs of payment and costs of defense.
This court believes that the settlement is some evidence of the proper apportionment of defense costs between carriers. Unless shown to the contrary, the court is inclined to leave the ratio as to defense costs as it was distributed at settlement. The parties, however, are entitled to a hearing on the issue.
Plaintiff’s motion for a declaratory judgment is granted to the extent that this court declares that there was a joint obligation by Nationwide and Reliance to furnish a defense for plaintiff in the underlying action, as set forth above. Nationwide’s cross motion for dismissal as against Reliance is denied.

. A repair order was written by "Eddie”, plaintiff Edward Belmer, and when the vehicle was returned by Monte Carlo to Fiorito, after the accident, the bill was paid and a receipt issued by "Eddie.”

. Belmer previously moved for summary judgment, prior to settlement of the underlying claim, on the issue of Nationwide’s obligation to defend the underlying action, which was denied by the Hon. Jules L. Spodek in an order dated January 24,1992.

. The Nationwide policy states:
"Non-owned autos used in your garage business. Any auto you do not own
* ** * used in connection with your garage business.
"D. Who is an insured.
"1. For Garage Operations Other Than Covered Autos "b. Your employees, directors or shareholders are insured but only while acting within the scope of their duties.
"Part I Words and Phrases
"F. 'garage operation’ * * * includes the ownership, maintenance or use of the autos indicated in Part II as covered autos. Garage operations also include all operations necessary or incidental to a garage business.
"Part VII Conditions "Other Insurance
"1. For any covered auto you own this policy provides primary insurance. For any covered auto you don’t own, the insurance provided by this policy is excess over any other collectible insurance.”
The Reliance policy states:
"Part A — Liability Coverage
"B. 'Insured’ as used in this Part means:
"2. Any person using 'your covered auto’
"Exclusions:
"A. We do not provide liability coverage for any person:
"6. while employed or otherwise engaged in the 'business’ of "b. repairing
"c. servicing * * * vehicles designed for use mainly on public highways. This includes road testing and delivery.

"Other Insurance

"If there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.”

. Where the policy between the insured and the excess carrier obligated the excess carrier only to pay judgments in excess of the primary carrier’s limit up to its own limit, it did not require it to share in the cost of defense. Also, the primary carrier was not entitled to reimbursement through the doctrine of equitable subrogation since each carrier did what it contracted to do (Occidental Fire & Cas. Co. v Underwriters at Lloyd’s, 19 Ill App 3d 265, 311 NE2d 330).
A different outcome resulted in Hobbs v Fireman’s Fund Am. Ins. Co. (339 So 2d 28 [La]), where the excess carrier contracted to defend and pay for all
*849 costs not covered by the primary carrier. The court held that the primary carrier had the duty to bear the entire cost of defense since the occurrence was within the terms of the policy, although the damages were in excess of the primary limit.