KENILWORTH INSURANCE COMPANY, Plaintiff-Appellant, v. GERALD J. CHAMBERLAIN et al., Defendants-Appellees.

(No. 11309;

Fourth District—April 30, 1971.

Costigan & Wollrab, of Bloomington, for appellant.

Reno, O'Byrne & Kepley, of Champaign, (Donald M. Reno, of counsel,) for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

The issue here presented appears to be one of first impression in Illinois: whether an "operator's policy" of insurance excluding coverage

when the motor vehicle is owned by the insured can be construed as to afford or include such liability coverage by virtue of the Financial Responsibility Law of Illinois. A declaratory judgment action was brought to resolve this question; both sides moved for summary judgment, and appellees prevailed. The sole point of error is whether the trial court granted summary judgment to the proper party.

Although relatively unimportant to the understanding of the limited nature of this appeal, here are the essential facts: on July 5, 1966, Kenilworth Insurance Company issued a policy to Chamberlain through an independent insurance office that Chamberlain had done business with in the past; the policy issued carried a "non-owner policy" endorsement and Kenilworth advised the Illinois Secretary of State by the customary proper form that it had issued to Chamberlain an "operator's policy"; Chamberlain was in fact the owner of an automobile upon the date of issuance of the policy, and claimed that he advised his insurance agent that he wanted to insure that particular vehicle; the insurance agent disputes this statement and says that Chamberlain desired a non-owner policy; while the policy was in force on January 1, 1967, Chamberlain was driving an automobile owned by him and was involved in an automobile accident resulting in the death of Perring; a separate lawsuit resulted therefrom and this action was filed to determine whether the subject "operator's policy" covered Chamberlain on the accident.

Parenthetically, we can swiftly dispose of the feeble argument that the insurance agent's acts could bind Kenilworth. It appears clear to us that the agency in question was nothing more than an independent insurance broker to whom Chamberlain made application for insurance. This local insurance firm solicited business from the public in general, was a broker and therefore the agent for Chamberlain, and accordingly any statements made to the firm would not be binding upon Kenilworth. *Zak v. Fidelity-Phenix Insurance Company*, 58 Ill.App.2d 341, 208 N.E.2d 29, 34.

The entire thrust of this appeal is directed to the Financial Responsibility Law of Illinois. Let us look at the relevant provisions of Ill. Rev. Stat., 1965, ch. 95½:

"Par. 7—315. CERTIFICATE OF INSURANCE PROOF. (a) Proof of financial responsibility may be made by filing with the Secretary of State the written certificate of any insurance carrier duly authorized to do business in this State, certifying that it has issued to or for the benefit of the person furnishing such proof and named as the insured in a motor vehicle liability policy, or policies *or in certain events an operator's policy* meeting the requirements of this Act and that said policy or policies are then in full force and effect. (b) * * * (c)

The Secretary of State shall not accept any certificate or certificates unless the same shall cover all motor vehicles then registered in this State in the name of the person furnishing such proof as owner and an additional certificate or certificates shall be required as a condition precedent to the subsequent registration of any motor vehicle or motor vehicles in the name of the person giving such proof as owner. Par. 7—317. 'MOTOR VEHICLE LIABILITY POLICY' DEFINED. (a) Certification.—A 'motor vehicle liability policy' as said term is used in this Act, shall mean an 'owner's policy' or an 'operator's policy' of liability insurance, certified as provided in Section 7—315 * * * as proof of financial responsibility for the future, and issued * * * by an insurance carrier duly authorized to transact business in this State, to or for the benefit of the person named therein as insured. (b) Owner's Policy.—Such owner's policy of liability insurance: 1. Shall designate by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is thereby intended to be granted; 2. * * * 3. * * * (c) Operator's Policy.—When an *operator's policy* is required, it shall insure the person named therein as insured against the liability imposed by law upon the insured for bodily injury to or death of any person or damage to property to the amounts and limits above set forth and growing out of the use or operation by the insured within the continental limits of the United States or the Dominion of Canada of *any motor vehicle not owned by him.*" (Emphasis added.)

Under these provisions, and like statutes in other jurisdictions, there are two means available for furnishing proof of financial responsibility. One is an *owner's policy,* the other is an *operator's policy.* It is required that the owner's policy "shall designate by explicit description or by appropriate reference, all motor vehicles" to be covered. When the other acceptable type of policy—operator's—is permitted under the law, it covers the insured person for liability growing out of the use or operation by the insured "of any motor vehicle not owned by him."

Concisely stated, then, the "owner's policy" insures the owner of a *particular* and *designated vehicle* from liability arising out of its use; the "operator's policy" insures the *person* or *operator* while he is in the act of operating non-owned vehicles. And therein lies the distinction: One insures the vehicle, the other insures the operator. The former is broader; the latter, limited.

■■ It seems clear to us that the statute here cited very specifically provides for two separate types of liability policies to be issued under the Financial Responsibility Law of Illinois. It seems equally clear that this was the obvious intention of the legislature by such enactment. Here,

Kenilworth duly advised the Secretary of State that an *operator's policy* had been issued to Chamberlain on the uniform certificate customarily used in the insurance business. Now, it is also apparent that this certificate provides for specific designation according to the type of policy issued. If it is an owner's policy, there appears adequate space, duly marked and designated, for the description of motor vehicles by year, trade name, model, body type, and identification number. There is also a box opposite the name "Owner's Policy" which may be checked. Below this appear the words "Operator's Policy—Applicable to any non-owned vehicle" with a box opposite. In the case before us, the box opposite "operator's policy" was duly marked and checked, and nothing was filled in under the information for an "owner's policy", nor was its box checked. Consequently, both by commission and omission, there can be no doubt but that the certification required by Section 7—315(a) and sent to the Secretary of State indicated the "operator's policy" as the one that had been issued to Chamberlain. Immediately thereafter, the Secretary of State's office sent a form notification to the insured that stated "An Operator's Policy Certificate issued by the Kenilworth Insurance Company has been accepted as proof of Financial Responsibility for you. This Policy is effective from July 1, 1966, to July 1, 1967." Now it appears as uncontradicted by all parties to this litigation that the Secretary of State obviously made a ministerial or administrative error in accepting such certification of an operator's policy as proof of Chamberlain's financial responsibility. But be that as it may, we know of no law— constitutional, statutory or decisional—that transfers the obvious and legally imposed burden of the Secretary of State to the insurance company. The task of determining adequacy of proof of financial responsibility rests solely upon that state officer, who is charged with both the administration and enforcement of this law (Ill. Rev. Stat., ch. 95½, par. 7—101, *et seq.*).

The opinions of courts in other states construing this question appear virtually unanimous in their support of our above reasoning in this case. Under similar or identical statutes, where there is a definite provision for and a distinction between "owner's policy" and "operator's policy", the greater weight of American law and the better view is unquestionably that where the insured is driving an automobile owned by him, under an operator's policy, coverage is denied. See: *State Farm Mutual Automobile Ins. Co. v. Chatham*, 318 S.W.2d 684 (Texas); *Galford v. Nicholas*, 167 A.2d 783 (Maryland); *Ohm v. Fireman's Fund Indemnity Co.*, 317 P.2d 575 (Oregon); *Kyle v. McCarron*, 192 A.2d 253 (Pennsylvania); *Lynn v. Farm Bureau Mutual Automobile Insurance Company*, 264 F.2d 921 (North Carolina); *Booth v. American Casualty Co.*, 261

F.2d 389 (South Carolina); *Reserve Insurance Company v. Staats*, 453 P.2d 239 (Arizona); *American Casualty Co. v. Cioffi*, 138 A.2d 757 (New Jersey); *Yoshida v. Liberty Mutual Insurance Co.*, 240 F.2d 824 (California); *Employers Liability Assur. Corp. v. Roux*, 100 A.2d 416 (New Hampshire).

But, argue appellees, the purpose of the financial responsibility law (and all insurance policies written thereunder) is for the protection of the public, and such purpose, coupled with a standard self-amending provision in the policy itself, requires us to apply the "basic rule of construction that all uncertainty should be resolved in favor of the insured." Granted—if there is indeed an uncertainty. But we cannot perceive any ambiguity whatever in the subject appeal. The statute specifically provides for *both* an "owner's policy" and an "operator's policy"; they are distinct and separate forms of coverage; and each retain their particular distinction, being duly sanctioned by the statute itself. It is universally recognized that a court has no prerogative or authority to make a new contract of insurance when a policy incorporates provisions not in violation of the law. (*Harris v. Universal Underwriters, Inc.*, 37 Ill.App.2d 367, 185 N.E.2d 704, 706.) Furthermore, if the language in an insurance policy is unmistakably clear, "* * * the rule that a policy of insurance is to be construed liberally in favor of the insured and against the insurer, is not applicable." *Meyer v. Aetna Casualty Insurance Co.*, 46 Ill. App.2d 184, 196 N.E.2d 707, 710.

Appellees loudly cry "public policy". Yet as desirable as it may be to require even broader and more inclusive financial responsibility coverage, consideration of our act clearly discloses that it does not demand a policy of insurance which covers all risks under any and all circumstances. It does require proof of financial responsibility by one of two types or categories of insurance. One of these statutorily recognized forms was issued in this cause. And this court cannot entertain argument that such policy can be redrawn by judicial fiat. Whether the law should conform more fully with the public policy interpretation asserted by appellees involves a legislative task—it is not a judicial one. And, manifestly it seems to us, a limited coverage policy cannot be converted or transformed into a broader contract because of the administrative error of a governmental department.

To support their favorable ruling below, appellees advance other theories which we have considered and find equally untenable. In short, they ask us to ignore the statute which provides for two distinct categories of insurance policies, overlook the fact that the Secretary of State is required to recognize both types, disregard the fact that the insurance company only agreed to (and was paid for) a limited liability policy,

forget that the insurance company duly advised the Secretary of State thereof by routine and customary certification, and dismiss the fact that the Secretary of State accepted such proof and duly notified the insured of that acceptance, specifically referring to the "operator's policy". We are asked to turn a blind eye to these admitted facts and hold liable this insurance company which issued a limited policy, specifically sanctioned by statute, and approved and accepted—although perhaps erroneously—by the state agency charged by law with the responsibility of approval or disapproval. This we cannot do. We conclude that there is no conflict between the statute and the intended limited coverage of the policy in question.

In fine, and for the reasons stated above, the judgment of the trial court is reversed, the case is remanded and the trial court is directed to enter judgment herein for appellant insurance company.

Reversed and remanded with directions.

SMITH, P. J., and TRAPP, J., concur.