OCCIDENTAL FIRE AND CASUALTY COMPANY OF NORTH CAROLINA, Plaintiff-Appellee, *v.* UNDERWRITERS AT LLOYD'S, LONDON, Defendants-Appellants.

(No. 58367; )

First District (1st Division)—April 8, 1974.

Lord, Bissell & Brook, of Chicago (William H. Hiller, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and William R. Kucera, of counsel), for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant Underwriters, the excess carrier, appeals from a summary judgment that it pay to the plaintiff Virginia Surety, the primary insurer, $35,939.17, as its pro rata share of the costs (legal fees and expenses, etc.) of an earlier unsuccessful appeal by the latter of a personal injury judgment against B. L. Cartage Co., insured by both of them, well in excess of their limits.

In 1954 suit was filed against the Cartage Company and one of its drivers for injuries arising out a collision between one of its trucks and a passenger vehicle. After protracted litigation, judgments were entered in November of 1965 against the Cartage Co. for $100,000 for the driver of the other vehicle and for another $20,000 for the passenger. The assured's attorneys had been selected and paid by Virginia Surety and, after said judgment, at the sole direction of Virginia Surety, they took an appeal to this court which (110 Ill.App.2d 260), in 1969, affirmed.

Two days later Virginia Surety notified the Cartage Co. and Underwriters that it was tendering the limits of its policy and would take no further appeal or other action. Underwriters then, at its own expense, including interest on the judgments from and after Virginia Surety's tender, filed a petition for leave to appeal, which was denied by the supreme court. The judgments were then satisfied in January of 1970, with Virginia Surety paying $20,000, Underwriters paying $50,000 and the Cartage Co. paying the balance of $50,000. Virginia Surety also paid all expenses and costs, including interest, up to the date of its tender; Underwriters paid all expenses and costs of the petition for leave to appeal, including interest on the judgments from the date of the tender to the date the judgments were actually satisfied; and the Cartage Co. itself paid no expenses, costs or interest whatsoever.

In February of 1970, Virginia Surety sued Underwriters, setting out the basic facts above outlined, attaching copies of both policies and contending: (1) that, under Condition 12 of its policy, where the assured had "other insurance" against the same loss, it was not liable for more than its pro rata share of such loss; (2) that, under Condition 1(c) of Underwriters' policy, where the sum for which such claim may be adjustable exceeds the primary limit and Underwriters consents to the proceedings continuing, it shall contribute pro rata to such costs; and (3) that it was therefore entitled to recover $35,305.69 from Underwriters as the latter's pro rata share of said costs. In June of 1970, a Count II, seeking another $16,391.52 as Underwriters' pro rata share of the costs in the trial court, prior to the date of the basic judgments, was filed.

Underwriters answered, including the affirmative defenses: (1) that Virginia Surety lacked standing to sue, in that it had no contractual relationship with Underwriters and was not a third-party beneficiary of that contract; (2) that, under Underwriters' policy, it need not pay any portion of such costs (a) because they were not incurred by the assured personally, (b) because all such costs were covered and paid by the primary insurer, and (c) because Underwriters did not in writing authorize the assured to incur them; and (3) that Underwriters'

policy is "excess" insurance, not "other insurance" within the meaning of the clause relied upon.

Both parties moved for summary judgment. In September of 1972, the trial court entered summary judgment for Underwriters insofar as Virginia Surety sought (in Count II) a pro rata recovery for its costs and expenses in the trial court up to the date of the judgments; and Virginia Surety has not cross appealed. The trial court did, however, enter summary judgment (on Count I) that Underwriters pay Virginia Surety $35,939.17, as its pro rata share of the costs (legal fees and expenses, etc.) of its said earlier unsuccessful appeal of the personal injury judgments.

Virginia Surety's primary layer policy, after providing the assured with coverages up to $10,000 for personal injuries to any one person and up to $20,000 for total personal injuries in any one action, in pertinent parts further provided as follows:

"Defense, Settlement, Supplementary Payments

As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

\* \* \*

(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

\* \* \*

The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

\* \* \*

## CONDITIONS

12. Other Insurance—Coverages A and B. If the insured has "other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable liability of all valid

and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise."

Underwriters' policy, in pertinent parts, provided as follows:

"THIS INSURANCE, subject to the terms, conditions, limitations and exclusions hereinafter mentioned, is to indemnify the Assured in respect of accidents * * * for any and all sums which the Assured shall by law become liable to pay and shall pay or by final judgment be adjudged to pay to any person or persons * * * as damages

(a) for bodily injuries, including death at any time resulting therefrom, caused by accident, hereinafter referred to as 'Bodily Injury', * * * arising out of the hazards covered by and as defined in the underlying policy/ies specified in the Schedule herein and issued by the VIRGINIA SURETY CO., NO. 30843 hereinafter called the 'Primary Insurers',

PROVIDED ALWAYS THAT it is expressly agreed that liability shall attach to the Underwriters only after the Primary Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) Bodily Injury

$10,000 ultimate net loss in respect of each person and, subject to that same limit each person,

$20,000 ultimate net loss in respect of each accident; * * * (all hereinafter referred to as the 'Primary Limit or Limits'); and the Underwriters shall then be liable to pay only such additional amounts as will provide the Assured with a total coverage under the policy/ies of the Primary Insurers and this Insurance combined of

(a) Bodily Injury

$50,000 ultimate net loss in respect of each person and, subject to that same limit each person,

$100,000 ultimate net loss in respect of each accident; and * * *

## DEFINITIONS.
* * *

2. Ultimate Net Loss.—The words 'ultimate net loss' shall be understood to mean the sums paid in settlement of losses for

which the Assured is liable after making deductions for all recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurers), whether recoverable or not, and shall exclude all expenses and 'Costs.'

3. Costs.—The word 'Costs' shall be understood to mean interest on judgments, investigation, adjustment and legal expenses (excluding, however, all expenses for salaried employees and retained counsel of and all office expenses of the Assured).

\* \* \*

## CONDITIONS.

1. Payment of Costs. 'Costs' incurred by the Assured personally, with the written consent of the Underwriters, and for which the Assured is not covered by the said Primary Insurers, shall be apportioned as follows:—

(a) In the event of claim or claims arising which appear likely to exceed the Primary Limit or Limits, no 'Costs' shall be incurred by the Assured without the written consent of the Underwriters.

(b) Should such claim or claims become adjustable previous to going into court for not more than the Primary Limit or Limits, then no 'Costs' shall be payable by the Underwriters.

(c) Should, however, the sum for which the said claim or claims may be so adjustable exceed the Primary Limit or limits, then the Underwriters, if they consent to the proceedings continuing, shall contribute to the 'Costs' incurred by the Assured in the ratio that their proportion of the ultimate net loss is finally adjusted bears to the whole amount of such ultimate net loss.

(d) In the event that the Assured elects not to appeal a judgment in excess of the Primary Limit or Limits the Underwriters may elect to conduct such appeal at their own cost and expenses and shall be liable for the taxable court costs and interest incidental thereto, but in no event shall the total liability of the Underwriters exceed their limit or limits of liability as stated above, plus the expenses of such appeal \* \* \*

3. Attachment of Liability.—Liability under this Insurance shall not attach unless and until the Primary Insurers shall have admitted liability for the Primary Limit or Limits, or unless and until the Assured has by final judgment been adjudged to pay a sum which exceeds such Primary Limit or Limits."

As we see it, the *first* issue is whether Underwriters' said "excess layer" policy constituted "other insurance" within the meaning of Condition 12 of Virginia Surety's above quoted primary policy, so as to

bring into effect the "pro rata" provision upon which Virginia Surety relies for its basic contention that it was not itself required to pay all such legal expenses and costs up until it had paid or tendered the limits of its policy.

The "other insurance" provision of Virginia Surety's policy, above quoted, applies only to "losses," not to the duty to defend, which Virginia Surety expressly undertook, but Underwriters (under the facts of this case) did not. See *Continental Casualty Co. v. Fireman's Fund Insurance Co.* (10th Cir., 1968), 403 F.2d 291, 322-323; *American Fidelity & Casualty Co. v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co.* (5th Cir., 1960), 280 F.2d 453, 459.

■■ Furthermore, such "other insurance" provision applies only to other insurance at the same level of coverage and not to other insurance which is "excess," either by contract or as a matter of law, such as is the case here. See *Jensen v. New Amsterdam Insurance Company* (1965), 65 Ill.App.2d 407, 416, 213 N.E.2d 141; *Farmers Automobile Insurance Association v. Iowa Mutual Insurance Co.* (1966), 77 Ill.App. 2d 172, 176-177, 221 N.E.2d 795.

As is said in *Jensen*, at page 412:

> "The extent of the limitation of the respective liabilities of General and New Amsterdam, and the conflict, if any, resulting from an attempt to apply the provisions of each policy to a given factual situation, must be determined from the language used in the respective policies. Iowa Nat. Mut. Co. v. Fidelity & Casualty Co. of N.Y., 62 Ill.App.2d 297, 301, 210 NE2d 622, (2nd Dist. 1965); Continental Cas. Co. v. American Fidelity & Casualty Co., 275 F2d 381, 384 (CA 7th, 1960); McFarland v. Chicago Exp., supra, 7; Zurich General Accident & Liability Ins. Co. v. Clamor, supra, 720. The principles involved in the interpretation and construction of insurance contracts are the same as those involved in construing other contracts. The 'other insurance' clauses must be interpreted according to the sense and meaning of the terms which the parties have used. Schweisthal v. Standard Mut. Inc. Co., supra, 230."

As a result, this "other insurance" clause (Condition 12) does *not* apply to avoid the general language in Virginia Surety's policy which expressly required it, in addition to the $10,000 and $20,000 judgment limits, to defend all suits brought against the assured and to:

> "pay all expenses incurred by the company, all costs taxed against the insured and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such

part of said judgment as does not exceed the limit of the company's liability thereon."

■■ Since all of the legal expenses and costs of its appeal were incurred by Virginia Surety before it tendered the limits of its policy (after the basic judgments had been affirmed), it is obvious that Virginia Surety was itself required to pay all legal expenses and costs of its appeal.

The *second* issue, as we see it, is whether Underwriters is liable (to whom?) for its pro rata share of such costs under Condition 1(c) of its policy.

The basic flaw in Virginia Surety's contention that Underwriters was required to contribute pro rata to such costs is that said subsection (c) is but one of various possibilities, all preceded by three express conditions precedent or *sine qua nons*, that such "costs" would only be payable where they were:

"incurred by the assured personally, with the written consent of the Underwriters and for which the assured is not covered by said Primary Insurers."

As demonstrated above, such costs were covered by Virginia Surety's policy and definitely were *not* expenses and costs "for which the assured is not covered by said Primary Insurers." It therefore follows that this condition does not apply, without regard to whether they were paid by the assured "personally," or whether the Underwriters ever gave "written consent" to the incurring of any such expenses and costs by the assured.

■■ We therefore conclude that Underwriters was not, under Condition 1(c) of its policy, required to contribute any share whatsoever of the costs on appeal.

A *third* possible issue is stated by Virginia Surety in its brief as:

"c. The Doctrine of Equitable Subrogation Entitles Virginia Surety to Reimbursement for the Underwriters' Proportionate Share of the Expenses of the Appeal."

Under this theory, Virginia Surety here contends that because both insurance companies ultimately had to pay their respective shares of the judgments they should share pro rata in the expenses and costs of the defense of their assured.

The plain and simple answer to this contention is that they did not contract to do so and that they were paid only for that which they did contract to provide. Virginia Surety contracted to pay judgments up to certain limits and also to pay all legal expenses and costs up to such time as had it paid or tendered the limits of its primary policy. On the other hand, Underwriters, insofar as the facts here are concerned,

agreed only to pay judgments in excess of Virginia Surety's limit up to its own limits. It did not, insofar as the facts here are concerned, agree to defend the assured or to share in the costs of defense.

As our supreme court said in *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill.2d 71, 269 N.E.2d 97, at page 86:

"Construing an insurance contract accurately and giving it the effect which its language clearly commands, is not *ipso facto* a breach of public policy merely because it disappoints [one of the litigants]."

See also *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill.2d 1, 7-8, 269 N.E.2d 295; *Kenilworth Insurance Co. v. Chamberlain* (1971), 131 Ill.App.2d 975, 979, 269 N.E.2d 317.

All in all, Virginia Surety was required to and did pay all legal expenses and costs in the trial court and on the appeal up to the time it tendered the limits of its policy, in addition to its share of the basic judgments. And Underwriters paid its share of these judgments, as it had contracted to do, and paid all legal expenses and costs incident to its petition for leave to appeal. Hence each has done precisely what it was paid for and undertook to do and we can perceive no reason to redistribute these expenditures.

We therefore reverse the judgment and remand the case with directions to enter summary judgment in favor of the defendant Underwriters and against the plaintiff Virginia Surety.

Reversed and remanded with directions.

EGAN, P. J., and GOLDBERG, J., concur.