**COLORADO FARM BUREAU MUTUAL INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**NORTH AMERICAN REINSURANCE CORPORATION,**
Defendant–Appellee.

No. 89CA1854.

Colorado Court of Appeals,
Div. I.

Nov. 23, 1990.

Quigley & Bruce, Neil Quigley, Denver, for plaintiff-appellant.

Hall & Evans, Malcolm S. Mead, Kevin E. O'Brien, Michael R. McCurdy, Denver, for defendant-appellee.

Opinion by Judge PLANK.

Plaintiff, Colorado Farm Bureau Mutual Insurance Company (CFBM), appeals the trial court's judgment dismissing its complaint. We affirm.

CFBM insured Ute Water Conservancy District (insured) under two policies of insurance—a comprehensive general liability policy with limits of $100,000 per occurrence (primary policy) and an umbrella liability policy with coverage for losses in excess of $100,000 (umbrella policy).

CFBM obtained separate contracts of reinsurance for the primary and umbrella policies. The primary policy was reinsured through American Agriculture Insurance Company (AA) and the umbrella policy through defendant, North American Reinsurance Corporation (North American).

In 1982, the insured, along with several others, were sued by a tire company after a fire destroyed one of its buildings. The tire company claimed $2,400,000 in damages.

These claims fell within the coverage of CFBM's policies. Therefore, CFBM provided the insured with a defense in the action.

Eventually the parties settled the action for $750,000. CFBM contributed $325,000 on insured's behalf, $100,000 from the underlying policy and $225,000 from the umbrella policy. The reinsurers each, in turn, reimbursed CFBM according to their respective agreements. In addition, AA paid its proportionate share of defense costs.

CFBM requested that North American also pay a proportionate share of the defense costs. CFBM filed this action as a result of North American's refusal.

After a bench trial, the court held that, under the contracts at issue, North American had no obligation to pay defense costs and dismissed CFBM's complaint. We agree with the trial court.

CFBM first argues that the language of its reinsurance agreement with North American defining "loss payable" to include expenses of investigation and settlement requires North American to pay its proportionate share. We do not agree.

The first line of the reinsurance agreement sets forth its scope: "[North American] indemnifies [CFBM] with respect to its insurance liability assumed under the policy set forth on the front of this Certificate." The certificate of the agreement lists CFBM's umbrella policy. The primary policy is not listed.

Therefore, in context, the "loss payable" clause merely obligates North American to pay a share of defense costs incurred specifically under the umbrella policy.

CFBM next contends that, in fact, it incurred defense costs under its umbrella policy. It argues that the "loss payable" and "ultimate net loss" clauses of the umbrella policy require an apportionment of the defense costs between the two policies. Again, we do not agree.

The loss payable clause states, in part: "[T]he company's liability under this policy ... shall not attach until the amount of the applicable underlying limit has been paid by or on behalf the insured."

The policy provides that the "company's liability" is the "ultimate net loss" in excess of the primary policy limits. "Ulti-

mate net loss" is defined to include both the amount the insured is required to pay as damages and that which the insured incurs in defense costs.

CFBM argues that these clauses create liability on the umbrella carrier for a proportionate share of any and all defense costs incurred in the action when it is settled in excess of the primary policy limits.

 Insurance policies are governed by general principles of contract interpretation. *Marez v. Dairyland,* 638 P.2d 286 (Colo.1981). Further, the meaning and effect of a contract is to be determined from a review of the entire instrument, not merely from isolated clauses or phrases. *International Technical Instruments, Inc. v. Engineering Measurements Co.,* 678 P.2d 558 (Colo.App.1983).

Here, in addition to the above general provisions, CFBM's umbrella policy specifically addresses the duty to defend, and specific provisions in a contract express more exactly what the parties intend than do broad or general provisions. *Denver Joint Stock Land Bank v. Markham,* 106 Colo. 509, 107 P.2d 313 (1940). Accordingly, those clauses are of primary significance in resolving the matter at issue.

First, under the heading "Defense and Settlement," the policy outlines a defense obligation for an occurrence not covered by the primary policy but covered by the umbrella.

Second, the policy provides:

*"If underlying insurance is exhausted* by any occurrence *the company shall be obligated to assume charge of the settlement of [sic] defense* of any claim or proceeding against the insured resulting from the same occurrence." (emphasis added)

In short, these clauses create a duty to defend on the umbrella insurer which is triggered either by the primary policy's non-coverage of a loss or the exhaustion of the limits of the primary policy. The parties here do not dispute that the primary policy provided coverage for the underlying action. Thus, the duty to defend under CFBM's umbrella policy could only be trig-

gered by the exhaustion of the primary policy limits.

The primary policy involved in this matter is exhausted upon payment of the limits in settlement or judgment. The primary insurer's duty to defend ceases at that time. Therefore, CFBM defended its insured under the primary policy until it paid the $100,000 in settlement.

Courts that have construed language similar to that involved in the two policies here have held that the umbrella carrier is liable only for that portion of the defense costs incurred after settlement. *See Hartford Accident & Indemnity Co. v. Continental National American Insurance Cos.,* 861 F.2d 1184 (9th Cir.1988); *Signal Cos. v. Harbor Insurance Co.,* 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980); *Occidental Fire & Casualty Co. v. Underwriters at Lloyds London,* 19 Ill.App.3d 265, 311 N.E.2d 330 (1974). *Cf. Miller's Mutual Insurance Ass'n v Iowa National Mutual Insurance Co.,* 618 F.Supp. 301 (D.Colo.1985). We agree with the reasoning set forth in these cases. *See Allstate Insurance v. Frank B. Hall & Co.,* 770 P.2d 1342 (Colo.App.1989). Therefore, defense costs were incurred under CFBM's umbrella policy only if costs were incurred subsequent to settlement.

In fact, defense costs were not incurred subsequent to the settlement in this matter. The costs at issue were incurred prior to settlement and the exhaustion of the primary policy limits. Therefore, these costs were incurred solely under the primary policy.

Since North American merely contracted to reimburse CFBM for liability assumed under the umbrella policy, we conclude that North American is not liable to share in the costs of defense of the underlying action.

Judgment affirmed.

PIERCE and TURSI, JJ., concur.