2001 OK 81

**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Plaintiff/Appellee,

v.

**FEDERATED RURAL ELECTRIC INSURANCE CORPORATION,**
Defendant/Appellant.

No. 96,172.

Supreme Court of Oklahoma.

Oct. 9, 2001.

Marc A. Powell, Alan R. Pfaff, Powell, Brewer, Gough & Withers, L.L.P., Wichita, KS, for Plaintiff.

Michael C. Stewart, Chubbuck, Smith, Rhodes, Stewart & Elder, P.L.L.C., Oklahoma City, OK, for Defendant.

SUMMERS, J.

¶1 Pursuant to the Revised Uniform Certified of Questions of Law Act, 20 O.S.Supp. 1997, 1601 et seq., the United States Court of Appeals for the Tenth Circuit has submitted to us the following question:

"In *Republic Underwriters Insurance Co. v. Fire Ins. Exchange,* 655 P.2d 544 (Okla.1982), the Supreme Court of Oklahoma applied the doctrine of equitable subrogation to require two insurance companies, both of whom insured against a single common loss, to pay their respective proportionate share of the loss. Will Oklahoma apply the doctrine to require an excess insurer to pay an equitable portion of the cost of defense prior to the primary insurer's tendering of the policy limits when the excess nature of the claim was evident from the facts?"

¶2 We answer in the negative. An excess insurer has no duty to participate in defense costs until the limits of the primary policy are exhausted. Oklahoma will not apply the doctrine of equitable subrogation to require an excess insurer to participate in the cost of an insured's defense prior to the exhaustion of the primary policy limits, even though the claim against insured exceeds the primary insurer's policy limits.

¶3 This action resulted from underlying litigation concerning property losses suffered by landowners in Woods County in February, 1996. A wildfire was allegedly started by a truck being negligently operated by an employee of O & M Powerline Construction Co.(O & M) who was installing a power pole under contract with Alfalfa Electric Cooperative (Alfalfa).

¶4 Federated Rural Electric Insurance Corporation (Federated) and United States Fidelity & Guaranty Co. (USF & G) each insured Alfalfa. USF & G, the primary insurer, had issued a $1 million commercial general liability and business automobile policy to O & M that listed Alfalfa as an additional insured under an endorsement to the policy. USF & G's policy provided that it had a duty to defend Alfalfa against suit for damages and that its duty ended when the policy limits had been paid. Federated, the excess insurer, issued a $1 million all risk blanket policy to Alfalfa and also a $6 million commercial umbrella policy to Alfalfa.

¶5 The damaged landowners brought an action in Woods County District Court seeking damages from O & M and Alfalfa, alleging negligence. (See *Bouziden v. Alfalfa Electric Cooperative,* 2000 OK 50, 16 P.3d 450). After the defendants were served with notice of the litigation pending against them, Alfalfa notified Federated of its need for defense, but Federated declined to defend Alfalfa and requested USF & G to provide the defense, which it did. USF & G also hired separate counsel to defend O & M. Between October 1996 and November 1997, USF & G paid approximately $197,000 for Alfalfa's defense. In 1997 USF & G paid its policy limit of $1 million into court, and then was discharged in an interpleader action upon a finding that it had exhausted its policy limits. At that point USF & G's duty to defend Alfalfa ended under the policy. USF & G withdrew its defense and Federated thereafter paid all Alfalfa's defense costs. Federated has never denied that it has a

duty to defend Alfalfa; it asserts only that it had no duty to do so until after USF & G exhausted its policy limits.

¶ 6 USF & G filed this declaratory judgment action in United States District Court in Kansas, seeking reimbursement from Federated under theories of contribution and equitable subrogation for half the defense costs it paid for Alfalfa. In denying Federated's motion for summary judgment, the District Court purportedly relied on this Court's decision in *Republic Underwriters Ins. Co. v. Fire Ins. Exchange,* 1982 OK 67, 655 P.2d 544, in support of its conclusion that Oklahoma would recognize USF & G's claim for proportionate reimbursement of defense costs from Federated under equitable subrogation where each had a duty to defend the insured. *USF & G v. Federated Rural Electric,* 78 F.Supp.2d 1172 (D.Kan.1999). Based on that ruling the District Court ultimately held USF & G was entitled to reimbursement from Federated, and entered judgment in favor of USF & G for half its costs of defending Alfalfa ($98,525). *U.S.F. & G. v. Federated Rural Electric,* 78 F.Supp.2d 1176(D.Kan.1999). It is the judgment in this latter case that Federated has appealed to the 10th Circuit, resulting in the question certified for our response.

■ ¶ 7 The appeal itself is not before us for decision, and it is outside our province to apply our response to the facts of the litigation before the certifying federal court. It is the entirely the task of that court to analyze our answer for application to its case. *Mc-Donald v. Schreiner,* 2001 OK 58, 28 P.3d 574.

## I. INSURANCE—PRIMARY AND EXCESS

■ ¶ 8 In addressing the issues involved in these questions it is important to understand the insurance terms and underlying concepts, and therefore the following overview is offered. *Primary insurance* provides immediate coverage for the insured upon the occurrence of a loss or the happening of an event which, under the terms of the policy, gives rise to immediate liability. In the context of liability insurance a. primary insurer generally has the primary duty to

defend and indemnify the insured unless specific language in the policy provides otherwise. An *excess insurance* policy is one which by its terms provides coverage that is secondary to the primary coverage; there is usually no obligation to the insured until after the primary coverage limits have been exhausted. *Equity Mutual v. Spring Valley Wholesale Nursery, Inc.,* 1987 OK 121, 747 P.2d 947; *Insurance Company of North America v. American Economy Insurance Co.,* 746 F.Supp. 59 (W.D.Okla.1990).

## II. EQUITABLE SUBROGATION

■ ¶ 9 Subrogation is a derivative concept, and is of two types: equitable (or legal) and conventional (or contractual.) Conventional subrogation is created by an agreement or contract between parties granting the right to pursue reimbursement from a third party in exchange for payment of a loss. Equitable subrogation, on the other hand, does not depend upon a contract but arises by implication in equity to prevent an injustice. The latter doctrine is based on the relationship of the parties and equitable principles of establishing substantial justice, and it is broad enough to include every instance where one person who is not a mere volunteer, pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter. *Sexton v. Continental Cas. Co.,* 1991 OK 84, 816 P.2d 1135, 1138; *Thurston National Ins. Co. v. Zurich Ins. Co.,* 296 F.Supp. 619 (W.D.Okla.); *Texas Employers Ins. v. Underwriting Members of Lloyds,* 836 F.Supp. 398 (S.D.Texas 1993); *Farmers Alliance Ins. Co. v. Commercial Union Ins. Co.,* 74 F.3d 1249 (10th Cir.1996).

■ ¶ 10 In this insurance context, a claim based on equitable subrogation allows an insurer who has paid coverage to stand in the shoes of the insured and pursue recovery from a third party primarily responsible for the insured's loss which the insurer both insured and reimbursed. *Fireman's Fund Ins. Co. v. Maryland Casualty Co.,* 65 Cal. App.4th 1279, 77 Cal.Rptr.2d 296, 302 (1998). The doctrine is an equitable effort to shift the entire cost burden, as it relieves entirely

the insurer who paid the loss but was not responsible for it, and places the entire burden on the party ultimately responsible for the loss and who should pay it, and whose equitable position is inferior to the paying insurer. *Maryland Cas. Co. v. Nationwide Mut. Ins.*, 81 Cal.App.4th 1082, 97 Cal. Rptr.2d 374, 377 (2000).

¶ 11 Equitable subrogation between insurers is commonly used as a vehicle to shift defense costs between primary and excess insurers. In its application the doctrine generally works to shift costs from the excess insurer to the primary insurer, because the primary insurer is primarily responsible to defend the insured, and the excess insurer usually has the superior equitable position. *Maryland Cas. v. Nationwide Mutual Ins. Co.,* supra.

### III. EQUITABLE CONTRIBUTION

¶ 12 Even a cursory reading of judicial decisions in this area reveals a great deal of confusion in the courts about the equitable doctrines of subrogation and contribution, their differences and their appropriate applications to various factual circumstances. Their principles are often misunderstood, and many times the doctrines are used interchangeably. One court observed that it is "difficult to think of two legal concepts that have caused more confusion and headache for both courts and litigants than have contribution and subrogation." *Firemans Fund Insurance Company v. Maryland Casualty Company,* supra, at 302. For thoughtful discussions of these issues, see *Maryland Cas. v. Nationwide Mutual Ins. Co.,* supra; Fireman's Fund v. *Maryland Casualty Co.,* supra; *Herrick Corp. v. Canadian Ins. Co.,* 29 Cal.App.4th 753, 34 Cal.Rptr.2d 844 (1995); and *Signal Companies, Inc. v. Harbor Ins. Co.,* 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (Cal.1980.).

■ ¶ 13 Equitable contribution is the right to recover, not from a party primarily liable for the loss, but from a co-obligor or co-insurer who shares common liability with the party seeking contribution. The doctrine applies only when co-insurers have covered the same insured and the same particular risk at the same level of coverage. The right

of contribution is not derivative of the rights of the insured, but belongs to each insurer independently to seek reimbursement from a co-insurer those sums which were paid in excess of an insurer's proportionate share of the common obligation. Therefore two primary insurers will have the right of contribution from each other, but in the absence of an agreement there is generally no right of contribution between a primary and excess insurer, because they do not share a common obligation with common rights. See *Firemans' Fund v. Md. Cas. Co.,* supra; *Maryland Casualty Co. v. Nationwide Mut. Ins.,* supra; *United States Fidelity and Guaranty Co. v. Tri–State Ins. Co.,* 285 F.2d 579 (1960); *Canal Ins. Co. v. Occidental Fire and Casualty Co. of N.C.,* 462 F.Supp. 512 (1978).

■ ¶ 14 Equitable contribution and equitable subrogation are distinct doctrines. Part of the confusion surrounding them comes from a misunderstanding of the equitable principles underlying their different public policies. The goal of equitable subrogation is to place the entire burden for a loss on the party who is ultimately responsible for it and by whom it should have been discharged, and to relieve entirely the insurer who indemnified the loss and who is not responsible for paying it. The aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk so that each pays his fair share of a common obligation, and one co-insurer does not profit at the expense of the others. *Fireman's Fund v. Maryland Cas. Co.,* supra, 77 Cal.Rptr.2d at 305.

### IV. IS THE DOCTRINE OF EQUITABLE SUBROGATION AVAILABLE TO A PRIMARY INSURER AS AGAINST AN EXCESS INSURER WHEN THE POLICY LIMITS OF THE PRIMARY INSURER HAVE NOT BEEN PAID OR TENDERED?

■ ¶ 15 Most jurisdictions that have addressed the question have concluded that where an insured has both primary and excess liability insurance, the excess insurer is not responsible to participate in the costs of defense until after the limits of the primary

policy are exhausted. These decisions recognize that the terms of a contract are generally enforced as written, and because there are no equitable considerations which justify departing from the express provisions and obligations of the primary and excess insurance contracts, it is inappropriate for courts to alter the parties' obligations and economic expectations.[1]

¶ 16 Most courts reject the argument advanced by USF & G that if a claim against the insured is for a sum greater than the primary coverage the excess insurer should be required to participate in the defense even though the primary policy is not exhausted. They recognize that insurance policies are governed by general principles of contract interpretation, and find that since the duty of an excess insurer to participate in the insured's defense is triggered only by exhaustion of the primary policy, a holding that the excess carrier must pay because the claim is greater than the primary coverage would be contrary to the policy's provisions, and the court would be reallocating risks that the parties had freely agreed to and had been compensated to assume. See *Hartford Accident & Indemnity Co. v. Continental National American Ins. Co.*, 861 F.2d 1184 (9th Cir.1988)(requiring excess insurer to participate may force payment although excess liability never attaches and despite explicit provisions of excess insurance policy; premiums are predicated on obligations assumed and equity cannot require insurer to provide coverage for which it was not paid); *Signal Companies Inc. v. Harbor Ins. Co.*, 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (Cal. 1980), 19 A.L.R.4th 75(no showing of compelling equitable principles justified imposing obligation in contravention of policy provisions; requiring participation in costs would make excess insurer a co-insurer with coextensive duty to defend); *Texas Employers v. Underwriting Members*, 836 F.Supp. 398 (S.D.Tex.1993)(to equitably apportion defense costs between primary and excess carriers would fly in the face of policy language and established case law; neither policy language nor evidence suggests insured or insurers reasonably expected excess carrier would participate beyond terms of the policy); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815 (1993) (gross disparity between primary and excess liability limits does not create equitable duty on the part of excess insurer to contribute to defense funds; any duty excess insurer might have had to pay defense funds did not depend on whether insured's claims were within excess insurance coverage where primary insurance had not been exhausted); *Colorado Farm Bureau Mutual Ins. Co. v. North American Reinsurance Corp.*, 802 P.2d 1196 (Colo.Ct.App.1990)(defense costs incurred prior to exhaustion of primary policy limits are incurred solely under the primary policy); *United States Fire Ins. Co. v. Roberts and Schaefer Co.*, 37 Wash.App. 683, 683 P.2d 600 (Wash.App.1984)(since primary insurer's duty encompasses claims against insured regardless of whether they are in excess of primary policy limits, excess insurer's duty to defend does not come into existence); *Occidental Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 19 Ill. App.3d 265, 311 N.E.2d 330 (1974)(where primary insurer contracted to and did pay defense costs and excess insurer paid its share of judgment, parties had done precisely what they had been paid for and court could perceive no reason to redistribute the

---

1. See, e.g., the following cases: *Signal Companies v. Harbor Ins. Co.*, 27 Cal.3d 359, 165 Cal. Rptr. 799, 612 P.2d 889 (1980); *United States Fire Ins. Co. v. Roberts and Schaefer Co.*, 37 Wash.App. 683, 683 P.2d 600 (Wash.App.1984); *Farm & City Ins. Co. v. United States Fidelity & Guaranty Co.*, 323 N.W.2d 259 (Iowa 1982); *Colorado Farm Bureau Mutual Ins. Co. v. North American Reinsurance Corp.*, 802 P.2d 1196 (Colo.Ct.App.1990); *Occidental Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 19 Ill. App.3d 265, 311 N.E.2d 330 (1974); *Fireman's Fund Ins. Co. v. Rairigh*, 59 Md.App. 305, 475 A.2d 509 (1984); *Molina v. United States Fire Ins. Co.* 574 F.2d 1176 (4th Cir.1978); *Hartford & Indemnity Co. v. Continental National American Ins. Companies*, 861 F.2d 1184 (9th Cir. 1988); *Ins. Co. of North America v. Medical Protective Co.*, 768 F.2d 315 (10th Cir.1985); *Texas Employers Ins. v. Underwriting Members of Lloyd's*, 836 F.Supp. 398 (S.D.Tex.1993); *Continental Casualty v. Synalloy Corp.*, 667 F.Supp. 1523 (S.D.Ga.1983); *Bettenburg v. Employers Liability Assurance Corp.*, 350 F.Supp. 873 (D.Minn.1972). Also see, Annot., *Allocation of Defense Costs Between Primary and Excess Insurance Carriers*, 19 A.L.R.4th 107.

expenditures); *Fireman's Fund Ins. Co. v. Rairigh,* 59 Md.App. 305, 475 A.2d 509 (1984)(if position urged by primary insurer were true, excess insurers would be obligated to defend every case where claim exceeded policy limits regardless of amount of damages claimant could prove); *Continental Casualty v. Synalloy Corp.,* 667 F.Supp. 1523 (S.D.Ga.1983)(where insured purchased one policy specifically as primary coverage and one as excess coverage, equating the two companies' defense duties as a matter of law would reform the contracts).

¶ 17 USF & G cites several cases in support of its argument, but these cases represent a decidedly minority position, and are not persuasive. *Belmer v. Nationwide Mutual Ins. Co.,* 157 Misc.2d 845, 599 N.Y.S.2d 427 (N.Y.Sup.1993), involved coincidental mutual coverage, not primary and excess coverage as we have here. *Viani v. Aetna Ins. Co.,* 95 Idaho 22, 501 P.2d 706 (1972), which was overruled on other grounds, primarily concerned questions surrounding the interpretation of multiple conflicting "other insurance" clauses. *American Fidelity Ins. Co. v. Employers Mutual Casualty Co.,* 3 Kan. App.2d 245, 593 P.2d 14 (1979), has been expressly disapproved by two federal courts.

¶ 18 In *Insurance Co. of North America v. Medical Protective Co.,* 768 F.2d 315 (1985), the Court of Appeals for the Tenth Circuit agreed with the federal district court's conclusion that the Kansas Court of Appeals' statement in *American Fidelity, supra,* 593 P.2d at 14, that "where the claim is over the policy limits of the primary policy and only one insurer undertakes the defense, the primary insurer and the excess insurer will each be liable in proportion to the amount of the claim each is required to pay" was dictum and did not necessarily reflect the law in Kansas. The Tenth Circuit noted that the Kansas Court of Appeals had relied heavily on the California Supreme Court's decision in *Continental Casualty v. Zurich Insurance Co.,* 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961), which itself had been significantly compromised by that court's later decision in *Signal Companies v. Harbor Ins., Co.,* 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980). (See *Fireman's Fund Insurance Co.*

*v. Maryland Casualty Co.,* 77 Cal.Rptr.2d 296 for other criticism of *Continental Casualty v. Zurich Insurance Co., supra.*)

¶ 19 The Tenth Circuit affirmed the district court's ruling and held that the excess insurer was not required to reimburse the primary insurer for defense costs. The appellate court found no reasonable basis existed for assuming that the insured or other insurers expected the excess insurer to participate in defense costs beyond the express terms of the policy, which obligated the excess carrier to provide a defense only where primary coverage did not exist or had been exhausted. The court found that no equitable considerations justified departing from those provisions.

¶ 20 Following the Tenth Circuit's lead, the Federal District Court of Kansas in *Regent Ins. Co. v. Ins. Co. of North America,* (D.Kan.) 1993 WL 191344, also declined to follow *American Fidelity.* Based on its finding that under Kansas law an excess insurer has no duty to defend an insured when primary coverage exists, the federal court found that the policies involved did not require the excess insurer to share in the defense costs, and where the claim was greater than the primary policy limits, there were no equitable considerations which justified a departure from the contracts. The parties had contractually assumed their obligations for which they had been compensated, and the court found it would be inappropriate for it to reallocate the risks they had voluntarily assumed.

¶ 21 We find the reasoning of the courts which have adopted the majority view to be persuasive in our determination of the law of Oklahoma.

¶ 22 We are not dissuaded from our negative answer to this certified question by *Republic Underwriters Insurance Co. v. Fire Insurance Exchange,* 655 P.2d 544 (Okla. 1982), *Republic* is quite distinguishable from the factual circumstances of this case, and is not controlling. Unlike the instant matter, *Republic* did not involve primary and excess insurers, payment of defense costs or even ordinary liability insurance policies.

¶ 23 In *Republic*, two primary insurers covered the same property against fire. Both policies, however, contained pro rata clauses—provisions which limited the liability of insurers to that proportion of the loss as their share of insurance bears to the total coverage. Upon receiving notice of loss, Republic voluntarily paid insureds for the entire loss although that payment exceeded its contractual obligation. Fire Insurance Exchange denied liability and Republic brought action against Fire Insurance, seeking pro rata reimbursement for the amount of the loss it had paid over its proportionate share.

¶ 24 *Republic* correctly recognized that contribution was not an appropriate remedy because when insurance contracts contain pro rata clauses, each contract is independent of the others, and the liability is several as the insurers who have restricted their liability do not have a common and concurrent obligation. See *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 1987 OK 121, 747 P.2d 947, 954. The Court was dissatisfied, however, with the idea that because Republic was considered a volunteer by reason of its payment in excess of its pro rata obligation, contribution would not assist it in recovering Fire Insurance's proportionate share which it had bound itself by contract to pay. The Court expressed its unwillingness to hold adversely to Republic, as it saw such a ruling likely to impede early payment of an insured's loss, and it therefore determined that equitable subrogation was applicable under the circumstances, and allowed Republic to enforce its claim under that doctrine.

¶ 25 Citing authority for general principles of equitable subrogation, the Court observed that the doctrine was based on broad concepts of equity and good conscience which were fluid and pliable enough to support the trial court's judgment in favor of Republic, a result which, in the Court's view, achieved natural justice by placing the burden where it "ought" to rest, on Fire Insurance, as it had contracted to pay its proportionate share. But again, *Republic* involved two primary insurers against fire, not one primary and one excess insurer, as in our case.

## V. SUMMARY

¶ 26 In answer to the certified question we declare that under Oklahoma law an excess insurer is not obligated to bear liability for the costs of defense until the primary policy is exhausted. Accordingly, an excess insurer is not liable to the primary insurer under the doctrine of equitable subrogation for defense costs incurred prior to exhaustion, even though the claim against insured is for an amount in excess of the primary policy.

¶ 27 CERTIFIED QUESTION ANSWERED.

¶ 28 ALL JUSTICES CONCUR.